Argued and submitted January 23, affirmed April 14, 1980

# STATE OF OREGON,
## *Respondent,*
### *v.*
# ROBERT STEVE MOORE,
## *Appellant.*

## (No. C 78-11-18832, CA 14705)

609 P2d 866

Lewis Bridgers Lawrence, Portland, argued the cause and filed the brief for appellant.

Christian W. Van Dyke, Assistant Attorney General, Salem, argued the cause for respondent. With him on the brief were James A. Redden, Attorney General, and Walter L. Barrie, Solicitor General, Salem.

Before Joseph, Presiding Judge, Richardson, Judge, and Schwab, Chief Judge.*

JOSEPH, P.J.

---

*Schwab, C.J., *vice* Lee, J., deceased.

## JOSEPH, P.J.

Defendant appeals his conviction for manslaughter, contending that the trial court erred by denying his motion to have hand and leg shackles[1] removed during trial and by allowing the testimony of a court-appointed psychiatrist. We affirm.

Defendant was accused of murdering a woman in broad daylight, in front of several witnesses, by stomping and kicking her in the head and neck. While in custody, defendant repeatedly "acted out," assaulting guards and other inmates and otherwise being disruptive in a violent manner. In one incident it took four jail guards to restrain him. Defendant appeared docile in court and was given sedative medication during the trial. Before the trial, the judge was informed by a guard about the incidents and of the security risk that defendant was felt to pose in the county jails. The court ordered that defendant remain in restraints, over defense counsel's objection that it was highly prejudicial and not required as a matter of security. Following closing arguments, the court made a record of the *ex parte* communications received prior to trial and relied upon in its denial of defendant's motion. Defendant tendered a defense of mental disease or defect and extreme emotional disturbance.

Shackling a criminal defendant is potentially prejudicial by impinging on the defendant's Fifth Amendment and Due Process rights against self-incrimination by mute testimony of a violent disposition. To restrain a defendant without substantial justification is a ground for reversal, *State v. Smith*, 11 Or 205, 8 P 343 (1883), but a trial judge has the discretion

---

[1] The restraints are not well described in the record. Defense counsel referred to "hand shackles and leg shackles." The trial judge used the expression "the small chains" in colloquy on the motion and said, "The so-called shackles, or small-leg chains are not leg irons, as someone reading the record might visualize."

to order the shackling of a defendant if there is evidence of an immediate and serious risk of dangerous or disruptive behavior.

In this case, there was substantial information known to the judge about defendant's potential for violent outbursts. Defendant had assaulted figures of authority and fellow prisoners while in jail awaiting trial and while en route to the courthouse. He had been a serious behavior problem right up to the beginning of his trial.[2] That he appeared docile in court did not prevent the judge from taking reasonable precautionary measures to insure the safety of those present. The formal record upon which the shackling was based might well have been better developed before the trial, rather than after closing arguments, but the record shows that defendant's propensity to violent behavior was known to court and counsel before the trial began. Although, especially after the fact, it is arguable that the "last resort" chosen by the trial judge (*People v. Duran*, 127 Cal Rptr 618, 545 P2d 1322, 1327 (1976); *see Illinois v. Allen*, 397 US 337, 90 S Ct 1057, 25 L Ed 2d 353 (1970)) was not absolutely necessary, absent a strongly persuasive showing of prejudice to the defendant and that the court abused its discretion, we will not second guess its assessment of its security needs.

Defendant also contends that the court erred in allowing a court appointed psychiatrist to testify. Two documents of appointment exist, involving the same psychiatrist and referring to the same dates. The first, captioned "Order Appointing Psychiatrist," refers to the psychiatrist as being "appointed psychiatrist for the defendant in the within matter." The other, captioned "Order Appointing Psychiatric Expert," appoints the psychiatrist specifically to determine

---

[2] The record says at one point that defense counsel had been "tossed *** out of the jail" by defendant. When the judge made the post-submission record, defense counsel stated his difficulties with his client.

"(1) Whether the defendant, at the time of the alleged commission of the alleged offense, suffered from a mental disease or defect to such an extent that he lacks substantial capacity either to appreciate the criminality of his conduct or to conform his conduct to the requirements of the law; (2) whether defendant is presently able to understand the nature of the charges against him and to aid and assist his attorney in the preparation of his own defense."

The results of the first part of the psychiatric examination ordered by this order were to be sent only to defendant's counsel. Both orders were on defendant's motion.

The state called the appointed psychiatrist as a rebuttal witness, over objection, after defendant had offered evidence of mental disease or defect and extreme emotional disturbance. Defendant argued that the testimony fell within the attorney-client privilege and should be excluded because the psychiatrist was appointed to assist defendant in his psychiatric defense. The court overruled defendant's objection, saying,

"THE COURT: I have no evidence before me that Dr. Parvaresh was hired as a consultant to the lawyer. The only evidence that I have is that he was hired as a general consultant, and therefore, I rule that the attorney-client privilege does not apply; and, therefore, I'll ask for a production, Mr. Schrunk, of his report to the prosecutor."

Testimonial privileges limit testimony to safeguard and promote certain confidential relationships, but in doing so they inhibit the search for truth and should therefore be strictly construed. Nonetheless, the attorney-client privilege has been extended to include the attorney's agents, *Brink et ux v. Multnomah County,* 224 Or 507, 356 P2d 536 (1960), particularly where the agent acts as a link between the attorney and client (*see, e.g., City & County of San Francisco v. Superior Court,* 37 Cal 2d 227, 231 P2d 26 (1951)). The burden of showing the applicability of the privileges is on the

party seeking to exclude testimony. *Groff v. S.I.A.C.*, 246 Or 557, 425 P2d 738 (1967). The record conclusively shows that the psychiatrist was appointed to assist the defense.

The trial judge correctly saw the issue, but he was misled by the state of the trial court file and the failure of counsel to correct his misunderstanding. It is apparent that when he ruled ·on the objection all he had in fact seen was the order entitled "Order Appointing Psychiatrist." It is ambiguous, and if it were the only document we would be inclined to agree with his conclusion. However, there was also in the file the order containing the language quoted above that clearly delineated two functions to be performed and unambiguously directed that one of them was to be performed for the sole use and benefit of the defense. Neither counsel pointed out to the court that there were two orders.[3] The judge was permitted to err by reason of the state of the file and the contending counsels' failure, but err he did. The rebuttal testimony should not have been allowed.

The issue remains whether the error was one that requires a reversal. We note, first, the prosecution's examination brought squarely to the jury's attention that the examination was done at the request of defense counsel and that it produced negative findings on the question of mental disease or defect and extreme emotional disturbance. In closing argument the prosecutor referred briefly to that testimony by "their own psychiatrist." It is fair to say that the jury was intended to make an inference from the failure of the defense to call the witness as well as from the substance of his testimony.

---

[3] They had been signed by the same judge, but not the judge who tried the case. In the file as it was delivered to this court, the order which we hold controlling is out of chronological order, misnumbered and not indexed. To find it requires a page-by-page search, and in doing so one comes first to the short form of order upon which the trial judge based his ruling.

[842]

The state makes an argument for a limited waiver of the attorney-client privilege in circumstances such as here. While we cannot say that the proposal is wholly without merit, we reject it for at least three reasons. First, it is designed a bit too snugly to fit the precise facts of this case and thereby loses some force as an argument for policy. Second, no firm rationale exists to explain why such a restraint should be applied on the preparation of a defense on the issue of ability to form a culpable intent, as distinct from any other form of expert assistance counsel might want to use. Finally, and as recognized by the state, the suggested "partial waiver" has such serious implications under the Sixth Amendment (*see e.g., U.S. v. Alvarez,* 519 F2d 1036 (3d Cir 1975)) and the Fifth Amendment and Article I, section 12 of the Oregon Constitution (*see Shepard v. Bowe,* 250 Or 288, 442 P2d 238 (1968); *State ex rel Johnson v. Woodrich,* 279 Or 31, 566 P2d 859 (1977)) that we are persuaded against undertaking to fashion a waiver rule, even in a very limited form.

Defendant's assertion of a violation of the Fifth Amendment and Article I, section 12 of the Oregon Constitution is not well taken. The only part of Dr. Parvaresh' testimony for the state which recited or implied any statements by defendant relating to the homicide was:

> "*** He is basically not a severely neurotic person and obviously the experience is traumatic to other people but Mr. Moore at the time he stated that he had used heroin and ritalin shortly before the event, so both of them do have a tendency to curtail the level of trauma, especially emotional trauma on the part of the person. So, in either case, he could not have suffered severe emotional disturbance at the time."

There is nothing in that which can fairly be said to have been self-incriminating. Therefore we are dealing only with the prejudicial consequences of a violation of the attorney-client privilege.

The facts and circumstances of the homicide were well established in the evidence and were not seriously

challenged by the defendant. When the principal defense witness, a well-qualified psychiatrist, was under direct examination on the issue of mental disease or defect and extreme emotional disturbance, the following colloquy took place:

"Q Did you have access to the reports of other mental health facilities outside of the State Hospital in drawing the data for your opinion?

"A Yes, I have one report from Dr. Parvaresh.

"Q Could you tell us what data you gathered out of that?

"A In general, Dr. Parvaresh and I seemed to have seen the same mental problem which we have both called a paranoid psychosis. The difference seems to be in degree and extent. I gather that Dr. Parvaresh doesn't believe—

"THE COURT: Doctor, the question isn't what Dr. Parvaresh felt or his opinions were. The question was what data you received from Dr. Parvaresh. He will be here subject to his own evaluation and cross examination.

"WITNESS: Then perhaps I should just say we both diagnosed a paranoid diagnosis.

"THE COURT: That wasn't the question. That was an opinion. That's not data.

"WITNESS: I'm confused at this point."

Thus it was put before the jury by the defense that Dr. Parvaresh had examined the defendant, that he had made a diagnostic report and that there might have some disagreement between the two doctors. When the defense rested immediately after the conclusion of the psychiatrist's testimony, the jury certainly knew that Dr. Parvaresh had not been called by the defendant. Given the evidence relating directly to the death[4] and the extensive and substantial other rebuttal evidence going to defendant's mental condition,[5]

---

[4] Five prosecution eyewitnesses gave detailed and consistent testimony describing the defendant's kicking and stomping the victim. There was no contradictory evidence for the defendant.

[5] Three psychiatrists and a clinical psychologist testified for the state. All agreed that defendant was not mentally ill.

[844]

we are sufficiently certain that, even had Dr. Parvaresh not testified, the verdict would have been the same. *State v. Van Hooser*, 266 Or 19, 511 P2d 359 (1973); *State v. Wood*, 34 Or App 569, 579 P2d 294 (1978).

Affirmed.