Argued and submitted September 19, affirmed November 29, 1995, petition for review denied April 2, 1996 (323 Or 114)

In the Matter of
Millican, Robert Shawn, a Minor Child.
STATE ex rel JUVENILE DEPARTMENT
OF MULTNOMAH COUNTY,
*Respondent,*

*v.*

Robert MILLICAN,
*Appellant.*

(9112-83948; CA A84749)

906 P2d 857

Kelly Michael Doyle argued the cause and filed the brief for appellant.

David B. Thompson, Assistant Attorney General, argued the cause for respondent. With him on the brief were Theodore R. Kulongoski, Attorney General, and Virginia L. Linder, Solicitor General.

Before Deits, Presiding Judge, and De Muniz and Haselton, Judges.

HASELTON, J.

De Muniz, J., dissenting.

### HASELTON, J.

Child appeals from a judgment finding him to be within the court's jurisdiction for committing an act which, if committed by an adult, would constitute sexual abuse in the third degree. ORS 163.415.[1] We affirm.

The juvenile court's adjudication arose from an incident in which child, then a 16-year-old resident of a boys' group home, allegedly grabbed the buttocks of complainant, a female staff member. The court determined that the conduct subjected the complainant to nonconsensual "sexual contact." ORS 163.415.

■■ Child first contends that the state failed to prove beyond a reasonable doubt that he acted with the mental intent necessary to render the physical contact "sexual," within the meaning of ORS 163.415. We review the evidence *de novo*, ORS 419A.200(5); ORS 19.125(3), giving due deference to the credibility determinations made by the juvenile court judge. *State ex rel Juv. Dept. v. Beyea*, 126 Or App 215, 217-18, 867 P2d 565 (1994); *State ex rel Juv. Dept. v. Cruz*, 111 Or App 216, 218, 826 P2d 30 (1992).

ORS 163.305(6) defines "sexual contact" as

"any touching of the sexual or other intimate parts of a person or causing such person to touch the sexual or other intimate parts of the actor *for the purpose of arousing or gratifying the sexual desire of either party*." (Emphasis supplied.)

After reviewing all the evidence, including evidence of other contemporaneous interactions between child and complainant, that involved touching and suggestive comments by child, we conclude that the evidence established, beyond a reasonable doubt, that child acted with the requisite intent and, thus, that the contact was "sexual contact."

---

[1] ORS 163.415(1) provides, in part:

"A person commits the crime of sexual abuse in the third degree if the person subjects another person to sexual contact; and

"(a) The victim does not consent to the sexual contact[.]"

Child next assigns error to the juvenile court's refusal to direct that he be unshackled during the delinquency hearing. Child contends, particularly, that his continued shackling violated due process and so interfered with his right to a fair trial that the adjudication must be reversed.[2]

The following colloquy occurred at the beginning of the proceeding:

"[Child's counsel]: We're prepared to proceed Your Honor. There is one preliminary matter for the court and that relates to the fact that [child] was brought to Court this morning in leg chains.

"That is the current procedure that the sheriff's officers use in transporting children from the detention center to the courthouse for various hearings. And while [being]short staff[ed] may well explain why that is necessary in a lot of circumstances, I strongly object, during the course of the trial, to having him appear and participate and testify while in chains.

"I think it has a definite cooling effect in terms of his exercise of his constitutional rights. And, I would argue that it is an interference with his right to due process and a fair trial.

"* * * * *

"[The court]: Your objection is noted. I'd just note that this isn't a jury proceeding. It's a proceeding before the court. And I understand your concerns. But I can assure the — the child that whether or not he is in leg chains — or not won't affect the court's view of the evidence presented here. I appreciate the objection, for the record, though.

"[Child's counsel]: Then, Your Honor, I do, frankly believe that the Court can overlook that. I think it is more difficult for the juvenile to overlook that. And I think it affects him and his participation in the trial. And I object on that basis as well."

Oregon has long recognized the right of adult defendants to be free from physical restraints during criminal trials. *State v. Smith*, 11 Or 205, 8 P 343 (1883). That right, which derives from the common law, as well as from the Fifth

---

[2] Child's argument appears to be based exclusively on federal constitutional protections, and he does not make a separate argument under the Oregon Constitution.

Amendment and the Due Process Clause of the Fourteenth Amendment to the United States Constitution, protects the accused from "self-incrimination by mute testimony of a violent disposition." *State v. Moore*, 45 Or App 837, 839, 609 P2d 866 (1980). Although most often invoked as a safeguard against potential jury prejudice, the right to stand trial unshackled also ensures that defendants may face the court " 'with the appearance, dignity and self-respect of a free and innocent [person].' " *State v. Kessler*, 57 Or App 469, 472, 645 P2d 1070 (1982), *quoting People v. Harrington*, 42 Cal 165, 10 Am Rep 296 (1871). As we stated in *Kessler*:

> "[T]he inferences the jury may draw is just one of the elements of prejudice to a defendant who is shackled. The shackles impinge on the presumption of innocence and the dignity of the judicial proceedings and may inhibit consultation with his attorney and his decision whether to take the stand as a witness." 57 Or App at 474.

The right not to be shackled is not, however, absolute. A trial judge has "the discretion to order the shackling of a defendant if there is evidence of an immediate and serious risk of dangerous or disruptive behavior." *State v. Moore*, 45 Or App at 839-40. In exercising that discretion, the court must receive and evaluate relevant information and must make a record allowing appellate review of its decision. *Kessler*, 57 Or App at 473. Although the information need not be presented in a formal adversary proceeding, "a conclusory statement alone by a prosecutor or law enforcement officer is not sufficient to permit the independent analysis necessary for the exercise of discretion." *State v. Schroeder*, 62 Or App 331, 337, 661 P2d 111, *rev den* 295 Or 161 (1983).

Notwithstanding our precedents recognizing adult defendants' rights to appear without physical restraint, we have not previously addressed the issue of shackling with respect to juvenile court proceedings. Child, citing those cases, argues that juveniles have the same right as adult defendants to appear free from physical restraints. We agree. "Neither the Fourteenth Amendment nor the Bill of Rights is for adults alone." *In re Gault*, 387 US 1, 13, 87 S Ct 1428, 18 L Ed 2d 527 (1967).

Although some of the concerns underlying *Kessler et al* do not apply in this context because there is no right to a

jury in juvenile court proceeding, *State ex rel Juv. Dept. v. Reynolds*, 317 Or 560, 574, 857 P2d 842 (1993), two factors warrant our extension of the right against physical restraint to juvenile proceedings. First, the right to remain unshackled is based on considerations beyond the potential for jury prejudice, including inhibition of free consultation with counsel. *Kessler*, 57 Or App at 474. *Accord Schroeder*, 62 Or App at 338 n 5 (finding violation of due process where the defendant's shackles were not visible to the jury). That concern applies equally in the juvenile context.

Second, extending the right to remain unshackled during juvenile proceedings is consonant with the rehabilitative purposes of Oregon's juvenile justice system. *See generally Reynolds*, 317 Or at 574. Allowing a young person who poses no security hazard to appear before the court unshackled, with the dignity of a free and innocent person, may foster respect for the judicial process. *See also In re Staley*, 67 Ill 2d 33, 364 NE2d 72 (1977) (extending to juveniles the right to remain unshackled in nonjury proceedings absent a showing that the accused posed a threat of escape).

■　　Here, the court received no evidence that child posed an immediate and serious risk of dangerous or disruptive behavior and made no findings to that effect. Consequently, denial of child's motion to remove the leg chains was error. *Schroeder*, 62 Or App at 337-38.

■　　The state argues, nevertheless, that that error was harmless. *See Schroeder*, 62 Or App at 338 (applying harmless error analysis to trial court's denial of defendant's motion to remove shackles). Because the error was of federal constitutional magnitude, we consider whether it was harmless beyond a reasonable doubt. *State v. Walton*, 311 Or 223, 230-31, 809 P2d 81 (1991); *Schroeder*, 62 Or App at 338.[3]

■　　In *Kessler*, we identified three potential types of prejudice from shackling: (1) impingement on the presumption of innocence and the dignity of judicial proceedings;

---

[3] Because child does not assert that the shackling violated the Oregon Constitution, *see* n 2, we do not consider whether there is "substantial and convincing evidence of guilt and little likelihood that the error affected the verdict." *Walton*, 311 Or at 230-31 (citing *State v. Hansen*, 304 Or 169, 180, 743 P2d 157 (1987)).

(2) inhibition of the accused's decision whether to take the stand as a witness; and (3) inhibition of the accused's consultation with his or her attorney. 57 Or App at 474. We consider each in turn.

Child asserts that the presence of shackles affected the trial court's assessment of the evidence, particularly on critical issues of credibility. We note, however, that at the beginning of the delinquency proceeding, the juvenile court stated that the leg chains "won't affect the Court's view of the evidence here." Child's trial counsel concurred, stating that she "frankly believe[d] the court can overlook that," and made no record either during or after the proceeding as to any prejudicial impact on the juvenile court as the trier of fact. Child argues, nevertheless, that even if the presence of shackles did not somehow bias the court's assessment of his credibility, his demeanor itself — that is, the manner in which he presented himself to the court through posture, facial expressions, and the like — was affected by his shackling. Whatever the merits of such a consideration in a different case, it is unsupported on the record here. Based on our independent review of the evidence, we do not believe that the trial court's credibility determinations were impermissibly skewed.

As to the second and third potential sources of prejudice, there is no indication in this record that the leg chains adversely affected child's decision to testify, or inhibited him from consulting with counsel. Child did, in fact, testify, and presented his version of events without any suggestion of discomfort or reluctance. Similarly, the record shows that child did on occasion participate in counsel's colloquy with the court, and there is no indication that the right to consult was actually impaired in any fashion.

On this record, we are satisfied that the constitutional error in denying child's motion to be unshackled was harmless beyond a reasonable doubt. Accordingly, child is within the court's jurisdiction for committing an act which, if committed by an adult, would violate ORS 163.415.

Affirmed.

**De MUNIZ, J.,** dissenting.

I agree that the juvenile court here made no record that child posed an immediate or serious risk of dangerous or disruptive behavior, and therefore erred in not ordering his leg irons removed. However, because I disagree that the error was harmless beyond a reasonable doubt, I respectfully dissent.

In assessing the effect of the juvenile court's error, the majority focuses on the possible types of prejudice set out in *State v. Kessler*, 57 Or App 469, 474, 645 P2d 1070 (1982) (risk of impinging on presumption of innocence and the dignity of judicial proceedings, as well as inhibiting consultation with counsel and decision whether to testify). The majority holds the error harmless beyond a reasonable doubt because it finds that child's appearance in leg irons did not prejudice the juvenile court as trier of fact, and that child did, in fact, testify and consult with counsel. 138 Or App at 148. I disagree with the majority's harmless error analysis for two reasons.

First, in addition to the *Kessler* factors, I would also consider the potentially prejudicial effect on a child's *ability* to testify, because shackling is likely to be more psychologically jarring for children than adults.[1] Wearing leg irons may seriously undermine a child's confidence in telling his side of the story, which would adversely affect the credibility determinations of even the most experienced juvenile judge.

Second, central to the majority's harmless error analysis is child's failure to demonstrate how the shackling prejudiced him. Specifically, the majority notes that child's counsel "made no record either during or after the proceeding as to any prejudicial impact on the juvenile court as a trier of fact." 138 Or App at 148. Because I believe that unnecessarily shackling children in a delinquency hearing is presumptively prejudicial, I would hold that child was not required to make a record of prejudice.

---

[1] The majority here apparently considered this factor because it found that child "presented his version of events without any suggestion of discomfort or reluctance." 138 Or App at 148.

This is no more than we grant adult defendants who are shackled without cause. In both *Kessler* and *State v. Bird*, 59 Or App 74, 650 P2d 949, *rev den* 294 Or 78 (1982), the state argued that the error was harmless because the defendants failed to prove how they were prejudiced by their unwarranted physical restraints. We held that

> "the prejudice to a defendant shackled or otherwise physically restrained during trial is *manifest and need not be proven in an individual case.* By showing that he was required to wear leg shackles, without a showing of substantial necessity, defendant has demonstrated a violation of his due process right to a fair trial." *Kessler*, 57 Or App at 474-75; *Bird*, 59 Or App at 78 (quoting *Kessler*) (emphasis supplied).[2]

Similarly, in *Duckett v. Godinez/McKay*, 67 F3d 734 (9th Cir 1995), the Ninth Circuit refused to place the burden of proving prejudice on an adult habeas petitioner who had been shackled without compelling reasons during his sentencing hearing. *Id.* at 749. Although the petitioner had presented no evidence of prejudice at the trial level, the court declined to perform a harmless error analysis because "[t]he risk of doubt * * * is on the state." *Id.*;[3] *but see State v. Long*, 195 Or 81, 244 P2d 1033 (1952) (handcuffing the defendant during voir dire did not require reversal where potential jurors may not have seen handcuffs, defense counsel neither questioned or objected to any juror on that basis and where "there was reasonable grounds for precautions which were taken").[4]

---

[2] Although *Kessler* was a jury case in which we could more easily infer prejudice, its holding applies equally to prejudice in nonjury proceedings, *e.g.*, influencing the defendant's consultation with counsel and decision whether to testify. 57 Or App at 474.

[3] The *Duckett* court did not go as far as finding reversible error, but instead remanded for a hearing on prejudice. 67 F3d 749. However, *Duckett* was an appeal from an adult habeas corpus action governed by a different standard of review. We review juvenile delinquency hearings *de novo*. ORS 419A.200(5); ORS 19.125(3). Because *Kessler* and *Bird* presume prejudice absent a finding of substantial necessity, as in this case, we are not required to remand to the juvenile court for a hearing on prejudice.

[4] It is unclear whether *Long* means that shacking errors are harmless unless the defendant makes a record of prejudice, or merely that shackling is not error if supported by "reasonable grounds." For reasons stated later in this dissent, I would resolve that uncertainty in child's favor.

If we do not require criminal defendants to demonstrate prejudice from unwarranted shackling, we cannot place that burden on juveniles. Physically restraining children without the proper findings not only violates the protections afforded adults, it also thwarts the historical purpose of Oregon's juvenile justice system.

Since 1907, the focus of this state's juvenile proceedings has been on "rehabilitation" of delinquents and not on "crime control." *State ex rel Juv. Dept. v. Reynolds*, 317 Or 560, 567, 857 P2d 842 (1993). The purpose of a delinquency hearing is not to punish or convict, but rather to salvage, guide, and protect delinquent youths as wards of the court. *Id.* at 568. The role of a juvenile judge is fundamentally different from that of a judge in an adult criminal prosecution. The ultimate question in juvenile court is not guilt or innocence, but rather "what kind of care, custody, and control will best meet the needs of the child." *State v. Stewart*, 123 Or App 147, 155, 859 P2d 545 (1993) (De Muniz, J., dissenting), *adhered to as modified* 126 Or App 456, 868 P2d 794 (1994), *aff'd* 321 Or 1, 892 P2d 1013 (1995).

Leaving child in leg irons without finding that he is dangerous, disruptive or prone to escape is so far removed from the "best interest of the child" that prejudice is presumed. The burden is then on the state, as in *Kessler, Bird* and *Duckett*, to prove harmless error by demonstrating a lack of prejudice.

I am aware that the recently passed Juvenile Justice Task Force Bill (SB 1) replaces the "best interest of the child" standard with the stated purpose of protecting the public, reducing juvenile delinquency and providing fair and impartial procedures for dealing with delinquent conduct.[5] Or Laws 1995, ch 422, § 1a(1). However, SB 1 becomes operative January 1, 1996. It was not the law at the time of child's hearing, and thus is not dispositive to this appeal. Furthermore, even if SB 1 effectively overrules *Reynolds* and makes delinquency hearings more akin to criminal prosecutions, that is all the more reason not to deny juveniles the protections afforded adult defendants.

---

[5] Even under this new system, shackling a child without the requisite findings is not a "fair and impartial procedure."

I also acknowledge that the majority would be correct in finding harmless error if there was "overwhelming evidence" that child committed an act, which if done by an adult, would constitute sex abuse in the third degree. *See State v. Schroeder*, 62 Or App 331, 338, 661 P2d 111, *rev den* 295 Or 161 (1983) (unwarranted shackling of adult defendant is harmless error beyond a reasonable doubt if there is "overwhelming evidence of his guilt"). However, in reviewing this record, I cannot conclude that such evidence exists.

This case is similar to *State v. Glick*, 73 Or App 79, 697 P2d 1002 (1985). In *Glick*, we could not say that shackling the defendant without cause was harmless error beyond a reasonable doubt because the evidence came down to a credibility contest between the defendant and alleged victim. *Id.* at 83 n 1. In other words, we could not tell what effect, if any, the defendant's shackles had on the jury's credibility determinations.

Here, the dispositive issue, as conceded by child's counsel below, was not whether child touched the alleged victim, but whether he did so with the requisite intent of sexually gratifying either the victim or himself. As in *Glick*, the only witnesses to the underlying incident were these two parties, and the juvenile court judge essentially was asked to weigh the credibility of their conflicting accounts. I cannot conclude from the record that child's shackles did not affect his credibility,[6] and thus cannot say the failure to remove his leg irons was harmless error beyond a reasonable doubt.

I would remand for a new hearing, directing the juvenile court to allow child to appear without physical restraints, unless the court receives evidence and finds that child poses an immediate or serious risk of dangerous or disruptive behavior.

---

[6] The transcript of child's testimony shows many pauses, repetitions and unfinished sentences, as if he were hesitant and unsure of himself. Whether this is child's normal way of speaking, or the proceedings themselves made him nervous or the shackles undermined his confidence, I cannot say. Under *Kessler, Bird* and *Duckett*, however, the state has the burden to demonstrate that the shackling did not prejudice child.