Argued and submitted July 31, reversed and remanded September 26, 2012

STATE OF OREGON,
*Plaintiff-Respondent,*

*v.*

SHERIE W. WALL,
*Defendant-Appellant.*

Douglas County Circuit Court
10CR0284MI; A146689

287 P3d 1250

Lindsey K. Detweiler, Deputy Public Defender, argued the cause for appellant. With her on the brief was Peter Gartlan, Chief Defender, Office of Public Defense Services.

Jeremy C. Rice, Assistant Attorney General, argued the cause for respondent. With him on the brief were John R. Kroger, Attorney General, and Anna M. Joyce, Solicitor General.

Before Armstrong, Presiding Judge, and Brewer, Judge, and Duncan, Judge.

BREWER, J.

## BREWER, J.

Defendant appeals a judgment of conviction, following conditional guilty pleas, for driving under the influence of intoxicants (DUII), ORS 813.010, and recklessly endangering another person, ORS 163.195. In her sole assignment of error, defendant challenges the trial court's denial of her motion to remove a leg restraint that had been placed under her clothing for her appearance at trial. We reverse and remand.

At her arraignment hearing, defendant executed a conditional release agreement that permitted her to remain out of custody pending trial. She had 13 prior felony convictions. However, she had never been convicted of escape. Before trial, defendant asked that her release be revoked so that she would receive credit for time served in any sentencing proceeding in this case. Thus, on the day of trial, defendant was an inmate in the Douglas County jail. A jail deputy brought her into the courtroom with a leg restraint on her right leg.

Before trial, defendant made a motion for removal of the leg restraint. The trial court held a hearing on the motion. Defendant testified that the restraint caused her to walk with a limp and that it made her feel "like a criminal" and like she could not communicate freely with her attorney. The brace made defendant's pants bulge by her ankle, knee, and thigh. She had elected to wear both slacks and a dress to court because an observer would be able to "tell that the brace [was] on under [her] pants so [she] thought that [she] could cover" it up with a dress. The deputy testified at the hearing that defendant was restrained because of her jail classification as a "medium inmate." However, the deputy did not know why defendant had received that classification.

The trial court denied defendant's motion:

"So and in looking I can see that [defendant] has pants that are covering the shackle. It is the—the Corrections Division's decision as far as they do the classifications for inmates and I do not do those. I have looked and I agree with [the prosecutor] that when she's ready to testify we can take a break and have her take the witness stand and

do the same when she goes to step off the witness stand. She—I can see that she's somewhat upset but I—we can take a little break for her to collect herself. I do not believe that this would be prejudicial. It's not visible, it's not on the outside of her clothing. And the jury is going to be in the first row. There's a—the front of the jury box kind of covers. You can't really see over that, so I do not believe there would be any prejudice to [defendant]. So if she needs a little break, it's already a little late, but we'll go ahead and take a ten minute break if she needs to be able to collect herself."

After the trial court denied the motion, defendant entered conditional guilty pleas to the DUII charge and one recklessly endangering count pursuant to ORS 135.335, and the court entered a judgment of conviction on those offenses and sentenced defendant accordingly. The only issue on appeal is whether the trial court erred in denying defendant's motion for removal of the leg restraint.

The right of an accused to be free from physical restraint during a criminal trial has common-law and constitutional underpinnings. *State v. Smith*, 11 Or 205, 207-08, 8 P 343 (1883); *State ex rel Juv Dept v. Millican*, 138 Or App 142, 145-46, 906 P2d 857 (1995), *rev den*, 323 Or 114 (1996). Specifically, physically restraining a defendant implicates Article I, section 11, of the Oregon Constitution and the Due Process Clause of the Fourteenth Amendment to the United States Constitution. *State v. Merrell*, 170 Or App 400, 403, 12 P3d 556 (2000), *rev den*, 331 Or 674 (2001). Because the pertinent analysis under Oregon law is similar to the analysis under the federal constitution, we do not separately address defendant's due process argument.[1]

---

[1] In reaching that conclusion in *Merrell*, we relied in part on this court's decision in *State v. Amini*, 154 Or App 589, 595, 963 P2d 65 (1998), *rev'd*, 331 Or 384, 15 P3d 541 (2000), where we had noted that Oregon courts have treated restraint issues similarly under Article I, section 11, of the Oregon Constitution, and under the Due Process Clause. *Amini* involved the issue of whether a jury ought to be instructed as to the consequences of a verdict of not guilty by reason of insanity. After we decided *Merrell*, the Supreme Court reversed our decision in *Amini*, concluding that, unlike the Due Process Clause, Article I, section 11, does not generally guarantee a "fair trial" but, rather, guarantees a trial by an impartial jury. *Amini*, 331 Or 384, 394-95, 15 P3d 541 (2000) (holding that "[t]he guarantee of the right to trial by an impartial jury [in Article I, section 11,] encompasses trial in a venue that is not biased or prejudiced against the defendant, not a trial that is fair in all respects"). The Supreme Court concluded that the defendant's instructional challenge issue did not implicate Article I, section 11, but, rather, had to be resolved based on federal constitutional precepts.

The use of restraints "impinge[s] on the presumption of innocence and the dignity of the judicial proceedings and may inhibit [a defendant's] consultation with his attorney and his [or her] decision whether to take the stand as a witness." *State v. Kessler*, 57 Or App 469, 474, 645 P2d 1070 (1982). Although most often invoked as a safeguard against potential jury prejudice, the right to stand trial without restraints also ensures that defendants may face the court "with the appearance, dignity and self-respect of a free and innocent [person]." *Id.* at 472. In *State v. Long*, 195 Or 81, 91, 244 P2d 1033 (1952), the court explained:

> "'The right of a prisoner undergoing trial to be free from shackles, unless shown to be a desperate character whose restraint is necessary to the safety and quiet of the trial, is Hornbook law. The reasons given are: "That his mind should not be disturbed by any uneasiness his body or limb should be under." *State v. Temple*, 194 Mo 237, 92 SW 869, 872 [(1906)], in which the author of the opinion states and quotes from *Rex v. Layer*, 16 How St Tr 94: that such restraint upon a prisoner "inevitably tends to confuse and embarrass his mental faculties, and thereby materially to abridge and prejudicially affect his constitutional rights of defense;" citing *People v. Harrington*, 42 Cal 165, 10 Am Rep 296 [(1871)], and that, "A prejudice might be created in the minds of the jury against a prisoner who should be brought before them handcuffed and shackled, which might interfere with a fair and just decision of the question of the guilt or innocence of such prisoner."'"

(Quoting *Eaddy v. People*, 115 Colo 488, 491, 174 P2d 717 (1946)).

With that host of concerns in mind, we held in *State v. Taylor*, 123 Or App 343, 348 n 3, 858 P2d 1358 (1993), that, "[t]o restrain a defendant during trial[,] the judge must find, on the record, that the defendant posed an immediate or serious risk of committing dangerous or disruptive behavior,

---

In light of the long line of Oregon authority that supported our conclusion in *Merrell* that challenges to physical restraints imposed on a defendant are similarly analyzed under Oregon law and the Due Process Clause, we believe that the Supreme Court's decision in *Amini* does not call that conclusion into question. *See, e.g., Guinn v. Cupp*, 304 Or 488, 493, 747 P2d 984 (1987) (Oregon "common-law" right to remain free from restraints is similar to due process right (citing *Estelle v. Williams*, 425 US 501, 505, 96 S Ct 1691, 48 L Ed 2d 126 (1976); *Illinois v. Allen*, 397 US 337, 344, 90 S Ct 1057, 25 L Ed 2d 353 (1970)).

or that he posed a serious risk of escape." We also have stated that restraint of a defendant during trial without substantial justification results in manifest prejudice. *State v. Glick*, 73 Or App 79, 82, 697 P2d 1002 (1985); *State v. Schroeder*, 62 Or App 331, 337-38, 661 P2d 111, *rev den*, 295 Or 161 (1983).

A trial judge has "the discretion to order the shackling of a defendant if there is evidence of an immediate and serious risk of dangerous or disruptive behavior." *State v. Moore*, 45 Or App 837, 839-40, 609 P2d 866 (1980). In exercising that discretion, the court must receive and evaluate relevant information and must make a record allowing appellate review of its decision. *Kessler*, 57 Or App at 473. The information need not be presented in a formal adversarial proceeding, but it must provide a basis for the trial court to make an independent assessment of the risk. *Id.* Although a sheriff's deputy or a prosecutor may provide helpful and necessary information in order to assist in the assessment of the risk posed by an unrestrained defendant, the trial court may not simply accept the conclusions of others; it must make an independent determination that restraint is justified. *See State v. Bird*, 59 Or App 74, 77, 650 P2d 949, *rev den*, 294 Or 78 (1982). We examine the trial court record to determine if there is evidence providing a particularized basis to require a defendant to wear restraints. *Glick*, 73 Or App at 82-83.

On appeal, defendant argues:

> "Here, there was no evidence, and therefore no finding that defendant's restraint was necessary to ensure the safety or quiet of the trial. Indeed, the court did not give any consideration to the issue, beyond noting the jail staff's preference and giving effect to that preference. The jail's desire that defendant be shackled during her trial is insufficient to support a finding that she would not conduct herself appropriately during trial. That does not satisfy the state and federal constitutional guarantees."

According to defendant, the state failed to establish any risk that defendant would be disruptive or dangerous, or that she would try to escape. Thus, defendant reasons, the trial court was unable to rely on any specific and articulable

facts that would have supported a determination that she required restraint.

In response, the state primarily focuses on the fact that the restraint that defendant wore would not have been visible to a jury. The state explains:

"But in cases such as this, where restraints are not visible to the jury, prejudice is not as significant and it is not presumed. [*State v.*] *Bates*, 203 Or App [245], 252-52, [125 P3d 42 (2005), *rev den*, 340 Or 483 (2006)]. Thus, their use is not, by default, impermissible. Depending on the circumstances, invisible restraints may or may not be appropriate.

"Because the use of invisible, minimally-intrusive restraints is not necessarily impermissible—that is, their use may or may not be appropriate, depending on the circumstances of the case—this court should require a lesser showing than what is required in so-called 'shackling' cases. And this court should review the trial court's decision for an abuse of discretion. *See Kessler*, 57 Or App at 473 (generally, trial courts have discretion to determine 'appropriate security measures necessary during trial'). Here, the trial court did not abuse its discretion. The court relied on three primary facts in making its decision: (1) defendant has 13 prior felony convictions; (2) the supervising authority has classified defendant as a security risk; and (3) defendant would not experience prejudice from the use of the restraint. Given those findings, the trial court did not abuse its discretion and this court should not reverse its decision."

With the parties' arguments so joined, this case squarely presents a question that we have not previously answered, namely, whether there is a difference in standards for determining the propriety of ordering a defendant to wear a nonvisible, as opposed to a visible, restraint. That question was presented in *Bates*, but we were not required to answer it because we concluded that the trial court's error, if any, in that case was harmless. *Bates*, 203 Or App at 253-54. That possibility does not exist in this case, however, because of the procedural posture in which it stands. As noted, defendant's convictions in this case were the result of conditional guilty pleas. ORS 135.335(3) provides:

"With the consent of the court and the state, a defendant may enter a conditional plea of guilty or no contest reserving, in writing, the right, on appeal from the judgment, to a review of an adverse determination of any specified pretrial motion. A defendant who finally prevails on appeal may withdraw the plea."

In appeals arising from conditional guilty pleas, we have consistently declined to engage in a harmless error analysis. In *State v. Dinsmore*, 182 Or App 505, 519, 49 P3d 830 (2002), we stated:

"ORS 135.335(3) provides that a defendant may enter a conditional plea and reserve the right to appeal. More to the point, it provides that, if a defendant prevails on appeal, he or she may withdraw the plea. Employing a harmless error analysis would defeat that statutory right. Defendant may, on remand, decide that she wishes to withdraw her plea and go to trial, or she may choose, in light of her limited success on appeal, not to withdraw it. The legislature, however, has left that choice to defendant."

That reasoning applies equally to this case. If defendant were to prevail on the merits, under the terms of the statute, she may choose to withdraw her guilty pleas on remand. We cannot speculate, based on the record, what choice defendant would make. Accordingly, we are unable to conclude that any error in denying defendant's motion to remove the restraint was harmless. *Id.*; *State v. Mastin*, 205 Or App 528, 530-31, 134 P3d 1052 (2006). It follows that we must resolve defendant's challenge on its merits. Accordingly, we reject the state's harmless error argument without further discussion.

Even though we did not resolve the issue in *Bates* concerning nonvisible restraints, that case assists our analysis. In *Bates,* the defendant appealed from a trial court order requiring him to wear a nonvisible stun belt during his jury trial. After considering the special problems presented by the use of such a restraint, we noted, as pertinent here,

"[t]hat a stun belt is not visible to the jury may be a distinction without a difference under Oregon law. In [*Millican*], we explained that the fact that a case was being tried to the court and not to a jury did not make a difference in the applicable analysis. We held that 'the right to remain

unshackled is based on considerations beyond the potential for jury prejudice, including inhibition of free consultation with counsel.' *Id.* at 147."

*Bates*, 203 Or App at 249 n 3.

We now conclude that, for purposes of the threshold showing that is required before restraints may be lawfully imposed, the distinction between visible and nonvisible restraints is, indeed, one without a difference.

As discussed, there are three foundations for the common-law and constitutional safeguards against the unfettered imposition of restraints on criminal accuseds: "(1) impingement on the presumption of innocence and the dignity of judicial proceedings; (2) inhibition of the accused's decision whether to take the stand as a witness; and (3) inhibition of the accused's consultation with his or her attorney." *Millican*, 138 Or App at 147-48 (citing *Kessler*, 57 Or App at 474). Although the first of those concerns is most prominent where a jury is aware that the defendant has been restrained, each also applies regardless of that circumstance. *Millican*, 138 Or App at 146-47, 150 n 2 (De Muniz, J., dissenting). The following statement in *Kessler* resonates in this case:

> "'The removal of physical restraints is also desirable to assure that "every defendant is . . . brought before the court with the appearance, dignity, and self respect of a free and innocent [person]." * * *

> "'We believe that possible prejudice in the minds of the jurors, *the affront to human dignity, the disrespect for the entire judicial system which is incident to unjustifiable use of physical restraints, as well as the effect such restraints have upon a defendant's decision to take the stand,* all support our continued adherence to the [rule requiring an evidentiary showing that the defendant is dangerous or a serious flight risk before ordering restraint].'"

57 Or App at 472 (emphasis added; citations omitted). Because those precepts do not depend solely on whether restraints are visible to the trier of fact, we conclude that, regardless of that circumstance, the state must adduce evidence that would permit the court to find that the defendant poses an immediate or serious risk of committing dangerous or

disruptive behavior, or that he or she poses a serious risk of escape, before the defendant may be restrained.[2]

We turn to the question whether such a showing was made in this case. As noted, the state relies on three factors to support the trial court's decision: (1) defendant had 13 prior felony convictions; (2) the jail had classified defendant as a security risk; and (3) defendant would not experience prejudice from the use of the restraint. The difficulty is that the record pertaining to defendant's criminal history does not reflect on her potential dangerousness, disruptiveness, or her status as a flight risk. In fact, the record shows that defendant voluntarily sought the revocation of her pretrial release agreement in order to accrue credit for time served if she were convicted. Moreover, the supervising authority's classification of defendant as a medium risk, without elaboration, does not help the state. The court was not authorized merely to defer to such a classification in the absence of particularized evidence that explained and justified it. Finally, whether defendant was prejudiced by the court's ruling would be pertinent to a harmless error analysis; however, it is immaterial to the threshold question whether the court was authorized to impose physical restraints on defendant.

Because that is the only question before us, we conclude that the record before the trial court was insufficient to establish that defendant posed an immediate or serious risk of committing dangerous or disruptive behavior, or that she posed a serious risk of escape. Accordingly, the trial court erred in denying defendant's motion to remove her leg restraint.

Reversed and remanded.

---

[2] We hasten to add that, after making such a finding based on sufficient evidence in the record, the court may well have more discretion to impose nonvisible, as opposed to visible, restraints in certain circumstances. Likewise, the application of harmless error principles may vary depending on whether the restraints are visible. *Millican*, 138 Or App at 150 n 2 (De Muniz, J., dissenting). However, those issues are not presented in this case.