708 March 18, 2026 No. 194

IN THE COURT OF APPEALS OF THE
STATE OF OREGON

STATE OF OREGON,
*Plaintiff-Respondent,*

*v.*

TRAVIS JAMES DOUGLAS JOHNSON,
*Defendant-Appellant.*

Lincoln County Circuit Court
23CR04743; A182738

Sheryl Bachart, Judge.

Argued and submitted February 19, 2026.

Francis C. Gieringer, Deputy Public Defender, argued the cause and filed the briefs for appellant. Also on the briefs was Ernest G. Lannet, Chief Defender, Criminal Appellate Section, Oregon Public Defense Commission.

Shannon T. Reel, Assistant Attorney General, argued the cause and filed the brief for respondent. Also on the brief were Dan Rayfield, Attorney General, and Benjamin Gutman, Solicitor General.

Before Tookey, Presiding Judge, Lagesen, Chief Judge, and Kamins, Judge.

TOOKEY, P. J.

Affirmed.

**TOOKEY, P. J.**

Defendant appeals his convictions for using a child in a display of sexually explicit conduct, ORS 163.670 (Count 1); luring a minor, ORS 167.057 (Count 2); contributing to the sexual delinquency of a minor, ORS 163.435 (Count 3); and third-degree sexual abuse, ORS 163.415 (Count 4). Defendant raises four assignments of error. First, defendant argues that the trial court abused its discretion when it denied his motion for a mistrial due to the state's violation of its discovery obligations. Second, he argues that the trial court erred in denying defendant's request for substitute counsel. Third, defendant argues that the trial court erred when it required him to wear an electronic restraint under his clothing during his jury trial. And fourth, defendant argues that the trial court erred in permitting the state to amend the indictment to clarify that, under Count 3, defendant was male, not female. For the reasons explained below, we affirm.

## I. FACTUAL AND PROCEDURAL BACKGROUND

The victim, S, was 16 years old at the time of the events in this case. In October 2022, S had been discharged from a rehabilitation facility where she was receiving treatment for drug use and mental health issues. S was not doing well mentally, and she testified that she was in "a manic episode."

In November 2022, S was driving around with her friend Granda.[1] S and Granda knew each other from high school. Granda introduced S to defendant. S exchanged phone numbers with defendant. The number defendant had given S was labeled "travis" in S's phone directory. S told defendant that she was 16 years old. Defendant told S that he was 31.

Defendant and S used their phones to exchange sexually explicit messages and photographs. Defendant asked S for nude photographs, and S sent one. Defendant sent S his contact information for Snapchat, which was labeled "Travis Johnson." Defendant and S planned for defendant

---

[1] Granda was also identified as "Richie," "Richie Rellos," or "Richie Granda."

to go to S's house to have sex, but when he got there, S was feeling uncomfortable, so they just talked.

S and defendant left S's house to meet up with Granda and another woman named Kaufman.[2] It was the first time S had met Kaufman. The group drove to a nearby reservoir. Granda tried to have sex with S, but she refused. In the backseat of Granda's car, S and defendant "started to try to have sex," but defendant "couldn't get hard at all, and he was getting very frustrated." Defendant was naked, and S was partially unclothed. Even though defendant was unable to maintain an erection, he put his penis inside S's vagina. Defendant also put his fingers in S's vagina. S saw that defendant had red patches on his skin, and, in a prior text, defendant had stated that he has psoriasis.

S told defendant that she "didn't want to do it anymore," and defendant got dressed and got out of the car. S did not remember where they went after the reservoir. Later, defendant tried to text S, but she blocked him because she "didn't want to talk to him anymore," and she "felt very uncomfortable and kind of scared."

S told her therapist about what had happened, and S's therapist contacted the police. After a police interview during which S showed a police officer her text messages, the state charged defendant with various crimes including using a child in a display of sexually explicit conduct and contributing to the sexual delinquency of a minor.

Before trial, defendant's court-appointed attorney filed a motion for substitution of counsel because the attorney was closing his office. On February 27, 2023, the trial court granted the motion and appointed a new attorney to represent defendant. At a hearing on that date, when defendant was told that he had been appointed a new attorney, defendant stated, "I'd like to get him removed, please." The trial court responded that defendant would have to "write a formal letter" and that the court would schedule a hearing. Defendant did not subsequently send a letter or renew his request for substitute counsel.

---

[2] Kaufman is often referred to in the record as "Kenzie" or "Makenzie." She was 22 years old at the time of trial.

At a pretrial hearing on September 26, 2023, the trial court heard arguments about whether defendant should wear restraints during trial. The court ordered use of an electronic restraint under defendant's clothing that would not be visible to the jury.

During his trial, the jury heard testimony from eight witnesses, including S, the officer who interviewed S, Granda, Kaufman, and defendant's wife. Defendant's wife, Johnson, was the sixth witness to testify for the state.[3] She testified that, in October 2022, she and defendant had purchased phones together. She said that, around that time, defendant was spending a lot of time with someone named "Richie." Johnson identified defendant's cellphone number, but she also testified that defendant sold the phone to "someone named Richard" on October 25, 2022, only five days after he had purchased it.

Based on that testimony, the state sought to impeach Johnson, asking, "Was there a reason you didn't say any of this to Detective Mitchell when he talked to you about it?" The state also moved to treat Johnson as a hostile witness, which the court granted. When the state continued to ask questions seeking to call into question Johnson's claim that defendant had sold his phone in October 2022, defendant objected on the ground of the spousal privilege, and the trial court excused the jury.

Outside the presence of the jury, defense counsel asked about the report that the state was relying on to impeach Johnson. It was determined that a police report based on an interview with defendant's wife from February 2023 as well as two audio recordings of the interview had been sent to defendant's former counsel on March 1, 2023, which was a couple of days after the trial court had appointed new counsel for defendant. There is no indication that defendant's new counsel received a copy of the report or the audio recordings.

When the state indicated that it would like to impeach Johnson with her pretrial statements, defense

---

[3] Although Johnson is also defendant's last name, when we refer to "Johnson" we mean defendant's wife.

counsel objected that he did not have "a chance to prepare for any of this, Your Honor. It was never discovered, and [it] should have been." Defendant moved for a mistrial, which the court denied. In the alternative, defendant requested that the court strike Johnson's testimony and excuse the witness. Given the discovery violation, the court granted the motion to strike Johnson's testimony. When the jury returned, the court instructed the jury to disregard and ignore all of Johnson's testimony. At the end of trial, the jury was again instructed not to consider evidence that had been stricken or excluded.

During his testimony, Granda acknowledged that he had seen a nude photo of S on defendant's phone because defendant had shown it to him, but Granda denied that he ever purchased a phone from defendant.

After the parties rested, the state moved to amend the indictment to correct what it described as "a scrivener's error." Under Count 3, defendant was charged with contributing to the sexual delinquency of a minor, and the indictment mistakenly referred to defendant as female, not male. The court allowed the amendment. The trial court instructed the jury that, under Count 3, the jury had to find that defendant was a male. After deliberating, the jury found defendant guilty of all four counts in the indictment.

## II.   ANALYSIS

A.   *The Discovery Violation and the Mistrial Motion*

In his first assignment of error, defendant argues that striking Johnson's testimony and instructing the jury to disregard it was insufficient to cure the prejudice caused by the discovery violation, and that the trial court should have granted the motion for a mistrial. We are not persuaded that the trial court abused its discretion. We begin with a review of the relevant legal principles.

The discovery statutes require that for all persons "the district attorney intends to call as witnesses," the state must disclose "relevant written or recorded statements or memoranda of any oral statements of such persons." ORS 135.815(1)(a). Those disclosures must be made "as soon as

practicable." ORS 135.845(1). Failure to do so is a discovery violation, and, to remedy it, a trial court may "grant a continuance, or refuse to permit the witness to testify, or refuse to receive in evidence the material not disclosed, or enter such other order as it considers appropriate." ORS 135.865.

We review a trial court's choice of remedy to cure a discovery violation for an abuse of discretion. *State v. Pilon*, 321 Or App 460, 466, 516 P3d 1181 (2022). "'Discretion' refers to the authority of a trial court to choose among several legally correct outcomes." *Id.* (citing *State v. Rogers*, 330 Or 282, 312, 4 P3d 1261 (2000)). In assessing the proper remedy for a discovery violation, "prejudice becomes the threshold issue." *Pilon*, 321 Or at 473. The prejudice inquiry focuses on "the extent of surprise" and what the party to whom disclosure should have been made would have done differently to prepare for trial. *Id.* at 474 (internal quotation marks omitted).

"When a party moves for a mistrial, the trial court must decide whether to grant the motion, deny the motion but take curative steps, or deny the motion without taking any curative steps." *State v. Northey*, 340 Or App 318, 330, 571 P3d 219 (2025). "The trial court's decision is reviewable for an abuse of discretion, taking into consideration the seriousness of the prejudice and the manner in which the court sought to cure the error, with the decisive issue [being] whether defendant's ability to receive a fair trial was impaired." *Maney v. Angelozzi*, 285 Or App 596, 614-15, 397 P3d 567 (2017) (internal quotation marks and citations omitted; brackets in *Maney*).

Here, we are not persuaded that the trial court abused its discretion when it denied the motion for a mistrial and instead granted the motion to strike Johnson's testimony. We begin by observing that defendant does not argue that the state acted intentionally or in bad faith in failing to disclose Johnson's pretrial interview. The record shows that the trial court entered an order substituting new counsel on February 27, 2023, and the state inadvertently sent the materials to defendant's former counsel on March 1, 2023. Nevertheless, even when a discovery violation is "understandable," it is "no less a discovery violation." *Pilon*, 321 Or App at 468.

Defense counsel did not learn about the detective's interview with defendant's wife until the middle of trial, which is the kind of surprise that the discovery statutes were enacted to prevent. *Id.* at 469. As a result, the discovery violation likely caused some prejudice. However, our ability to gauge the extent of the prejudice is hampered by the fact that the content of Johnson's pretrial statements to the detective are not part of the record. Defense counsel, for example, did not request a continuance to review the contents of the report or to make a record of what counsel would have done differently if the report had been properly disclosed. *See* ORS 135.865 (to remedy a discovery violation, the trial court may grant a continuance). We are not willing to speculate regarding the extent of prejudice caused.

In arguing he suffered substantial prejudice, defendant claims that Johnson was "the only witness to identify that the phone number associated with the 'travis' contact in [S]'s phone belonged to defendant." That claim is not persuasive because there was significant circumstantial evidence that the number belonged to defendant. For example, S testified that she exchanged numbers with defendant after meeting with him in person, and his number was labeled "travis" in her phone, which is defendant's name. And during their text message exchange, S and the person with whom she texted agreed to meet in person, and defendant subsequently went to S's house. The person with whom S texted also mentioned that he had psoriasis, and S observed red spots on defendant's body. Thus, S's testimony, and the text messages themselves, provided the jury with a basis to find that the number belonged to defendant.

Granting a motion for a mistrial is "a drastic remedy to be avoided if possible." *State v. Woodall*, 259 Or App 67, 75, 313 P3d 298 (2013), *rev den*, 354 Or 735 (2014) (internal quotation marks omitted). Absent a contemporaneous explanation from defense counsel about how the failure to disclose Johnson's pretrial statements caused substantial prejudice, we discern no abuse of discretion in the trial court's denial of the request for a mistrial. Instead, the trial court excluded Johnson as a witness, which was itself a significant penalty. *See Pilon*, 321 Or App at 471 (describing the sanction of

excluding nondisclosed evidence as one that "should be used only in the most extreme situations" (internal quotation marks omitted)). And the trial court also instructed the jury to disregard Johnson's testimony. "[W]e assume that a jury has followed a court's curative instruction unless there is an overwhelming probability that the jury was incapable of" doing so. *State v. Garrison*, 266 Or App 749, 757, 340 P3d 49 (2014), *rev den*, 356 Or 837 (2015) (internal quotation marks omitted). Here, Johnson's only testimony that was harmful to defendant was her identification of the phone number as belonging to defendant. Defendant fails to establish an overwhelming probability that the jury could not disregard that testimony. We conclude that there was no abuse of discretion when, in response to the discovery violation, the trial court denied the request for mistrial, granted the request to strike Johnson's testimony, and instructed the jury to disregard her testimony.

B.  *Request for Substitute Counsel*

In his second assignment of error, defendant argues that the trial court erred in denying his request for substitute counsel because the court did not conduct a proper inquiry before denying the request. "A trial court faced with a motion to substitute indigent counsel should engage in an inquiry into the legitimacy of any complaint about appointed counsel." *State v. Daley*, 318 Or App 211, 213, 506 P3d 502, *rev den*, 370 Or 212 (2022) (internal quotation marks omitted). "The trial court possesses discretion to determine the scope of the inquiry necessitated by a particular complaint, and the trial court's ruling on a motion to substitute counsel is reviewed for abuse of discretion." *Id.* (internal quotation marks omitted).

Before trial, the court allowed defendant's former court-appointed attorney to withdraw and appointed a new attorney to represent defendant. At a pretrial hearing on the same day that it granted the motion for substitute counsel, the following exchange occurred:

"THE COURT:   Okay. You filled out an application for Court-appointed counsel. I have approved that. I'm actually appointing Matthew Martin to represent you. He's going to be your new attorney on your other pending cases.

    "THE DEFENDANT:   I'd like to get him removed, please.

    "THE COURT:   Okay. Well, you'll have to write a formal letter to me, and then I'll schedule a hearing on it.

    "THE DEFENDANT:   Okay.

    "THE COURT:   You can't just verbally tell me that. Okay?

    "THE DEFENDANT:   Mm-hmm."

Defendant did not subsequently submit a letter or file a motion.

        We are not persuaded that that exchange can be viewed as the denial of a motion for substitute counsel. Instead, the trial court simply deferred ruling on the request until defendant put his concerns in writing, which he never did. And even if we were to assume that the trial court denied defendant's request, "a trial court does not *always* abuse its discretion when it does not inquire of a defendant personally when a defendant seeks substitute counsel." *State v. Hernandez-Sanchez*, 339 Or App 532, 544, 569 P3d 673, *rev den*, 374 Or 379 (2025) (emphasis in original). Instead, the court's inquiry into the legitimacy of any complaint is "necessarily, case—and fact—specific." *Daley*, 318 Or App at 213. Here, the request was made only moments after the trial court had informed defendant that the court was appointing the new attorney, and the hearing occurred over six months before defendant's jury trial. Given those facts, it is not clear how the newly appointed attorney could not have done anything at that early stage that would cause defendant to be concerned about the adequacy of the attorney's performance in representing defendant. *See id.* ("A legitimate complaint *** is one that is based on an abridgement of a criminal defendant's constitutional right to counsel. The right to counsel requires adequate performance of an appointed lawyer's professional assistance." (Internal quotation marks omitted.)). We reject defendant's second assignment of error.

C.   *Restraints*

        In his third assignment of error, defendant argues that the trial court abused its discretion when it required

him to wear an electronic restraint during trial. Oregon has long recognized the "right of an accused to be free from physical restraint during a criminal trial." *State v. Wall*, 252 Or App 435, 437, 287 P3d 1250 (2012), *rev den*, 353 Or 280 (2013). That right "has common-law and constitutional underpinnings." *Id.* "Specifically, physically restraining a defendant implicates Article I, section 11, of the Oregon Constitution and the Due Process Clause of the Fourteenth Amendment to the United States Constitution." *Id.*

"That right, however, is not absolute. A trial court has the discretion to order a defendant to wear restraints if there is evidence of an immediate and serious risk of dangerous or disruptive behavior." *State v. Osborn*, 315 Or App 102, 108, 500 P3d 61 (2021) (internal quotation marks omitted). We review a trial court's order requiring a defendant to wear restraints for abuse of discretion. *Id.*

At a pretrial hearing regarding whether defendant should wear restraints during his trial, a sheriff's deputy testified that he had "several fights with other inmates, [and] opposition to staff," and defendant had a verbal argument with another inmate only days earlier. In addition, at a prior trial, defendant took some pens from the courtroom that the deputy had to retrieve. In reviewing defendant's criminal history, the trial court noted that he had convictions for supplying contraband, possession of a weapon by an inmate, and aggravated harassment of a public safety officer.

Given defendant's criminal history and the testimony regarding his behavior in jail, the trial court had a basis to conclude that defendant posed a risk of dangerous or disruptive behavior. As a result, the order requiring restraints was not an abuse of discretion. *See Osborn*, 315 Or App at 107-08 (explaining that we will uphold a decision to require restraints "if there is evidence providing a particularized basis to require a defendant to wear restraints"); *see also State v. Funrue*, 339 Or App 427, 436, 568 P3d 1023 (2025) ("When reviewing for an abuse of discretion, we do not determine whether, sitting in the shoes of the trial court, we would make the same ruling; rather, our role is to determine whether the trial court came to a legally permissible choice among the range of options.").

In any event, because the electronic restraint was not visible to the jury, and because defendant has not argued that it impeded his ability to move during the trial, interfered with his choice of clothing at trial, or impacted his decision not to testify, we conclude that the error, if any, in requiring defendant to wear an electronic restraint was harmless. *See State v. Davis*, 336 Or 19, 32, 77 P3d 1111 (2003) (under the state constitution, an error is harmless if there is little likelihood it affected the verdict); *see also State v. Walton*, 311 Or 223, 231, 809 P2d 81 (1991) (under the federal constitution, the state must prove an error is harmless beyond a reasonable doubt). We therefore reject defendant's third assignment of error.

D.   *Amendment to the Indictment*

In his fourth and final assignment of error, defendant argues that the trial court erred when it amended the indictment to change a reference to defendant's sex from "female" to "male" in Count 3 of the indictment, which charged defendant with contributing to the sexual delinquency of a minor.

The Oregon Constitution permits an amendment to an indictment when it is a matter of form, but not when it goes to the substance of the indictment unless approved by a grand jury. *State v. Wimber*, 315 Or 103, 113, 843 P2d 424 (1992). Similarly, under the federal constitution, an indictment may not be amended except by a grand jury, unless the change is "merely a matter of form." *Russell v. United States*, 369 US 749, 770, 82 S Ct 1038, 8 L Ed 2d 240 (1962).

ORS 163.435(1) provides:

"A person 18 years of age or older commits the crime of contributing to the sexual delinquency of a minor if:

"(a)   Being a male, he engages in sexual intercourse with a female under 18 years of age; or

"(b)   Being a female, she engages in sexual intercourse with a male under 18 years of age; or

"(c)   The person engages in oral or anal sexual intercourse with another person under 18 years of age or causes that person to engage in oral or anal sexual intercourse."

Here, the indictment alleged that defendant "being *a female* over the age of eighteen years, did unlawfully and knowingly engage in an act of sexual intercourse with [S], a female under the age of eighteen years." (Emphasis added.)

After the parties rested, the state moved to amend the indictment to change the word "female" to "male" in Count 3. Defendant responded that his sex was an element of the crime, so the amendment required resubmission to the grand jury. Instead of directly amending the indictment, the trial court indicated that it might simply address the issue when instructing the jury. The following day, the court indicated that it had considered the factors set out in *Wimber*, 315 Or at 114-15, that it would allow the amendment, and that it had drafted the jury instructions accordingly. When instructing the jury on the charge of contributing to the sexual delinquency of a minor, the court instructed that the state had to prove that defendant, "being a male, knowingly engaged in sexual intercourse with a female," S.

On appeal, defendant argues that the amendment "added a new theory" or element to the crime and that it "went to a matter of substance and not form." We are not persuaded. In *State v. Long*, 320 Or 361, 363, 885 P2d 696 (1994), the indictment alleged the offense occurred during an incorrect date range. The Supreme Court determined that the date of the offense was not a material element of the crime, and it separately noted that the amendment was permissible because it merely served to correct a scrivener's error. *Id.* at 368, 371.

Here, the sex of the defendant *is* a material element of the offense of contributing to the sexual delinquency of a minor under ORS 163.435(1)(a), but the indictment did not omit that element; instead, it incorrectly identified defendant's sex as female rather than male. We therefore conclude that it was permissible for the trial court to amend the indictment without resubmitting the case to the grand jury because the amendment served to correct a scrivener's error in Count 3 of the indictment. Count 4 of the indictment, which charged defendant with third-degree sexual abuse, expressly referred to defendant committing that crime by causing the victim to "touch the defendant's penis," which

shows that the grand jury understood that defendant was male, and that the reference to defendant being female in Count 3 was a typographical error. The victim expressly testified at trial that defendant was male, and defendant did not present any evidence disputing that. The amendment changing the word "female" to "male" in Count 3 did not change how defendant would have defended himself against the charges, so he suffered no prejudice when the indictment was amended to fix a scrivener's error. *See State v. Pachmayr*, 344 Or 482, 493, 185 P3d 1103 (2008) ("The amended indictment did not require defendant to defend against any allegations that were not already included in the original indictment."). We reject defendant's fourth assignment of error.

Affirmed.