320 October 2, 2024 No. 695

IN THE COURT OF APPEALS OF THE
STATE OF OREGON

In the Matter of A. M.,
a Person Alleged to have Mental Illness.
STATE OF OREGON,
*Respondent,*

*v.*

A. M.,
*Appellant.*

Clackamas County Circuit Court
23CC03225; A181716

Susie L. Norby, Judge.

On respondent's petition for reconsideration filed August 14, 2024. Opinion filed June 26, 2024. 333 Or App 453, 553 P3d 593 (2024).

Greg Rios and Robert A. Koch, Assistant Attorneys General, for petition.

Before Aoyagi, Presiding Judge, Lagesen, Chief Judge, and Kistler, Senior Judge.

KISTLER, S. J.

Reconsideration allowed; opinion adhered to.

## KISTLER, S. J.

The state has petitioned for reconsideration of our decision in *State v. A. M.*, 333 Or App 453, 553 P3d 593 (2024), which remanded this case for an evidentiary hearing. The state reasons that the intended scope of the evidentiary hearing on remand can be understood in one of two ways and asks for clarification as to what we intended. We allow the state's petition for reconsideration and, for the reasons explained below, adhere to our original opinion.

The trial court civilly committed appellant after holding a remote rather than an in-person hearing. In doing so, the court followed a Presiding Judge order that required that all civil commitment hearings in Clackamas County be held remotely, regardless of whether there was a particular need for doing so. The primary question that appellant has raised on appeal is whether due process requires an in-person civil commitment hearing in the absence of a particularized reason for proceeding remotely.[1] Under *Mathews v. Eldridge*, 424 US 319, 335, 96 S Ct 893, 47 L Ed 2d 18 (1976), the answer to that question turns on three factors: the private interest at stake, the degree to which an in-person hearing would result in a more accurate determination, and the burden on the government of providing an in-person hearing.

In our original opinion, we explained that the private interest affected by a civil commitment hearing— involuntary hospitalization for up to 180 days—is substantial, while the burden on the government of providing an in-person hearing is "minimal at most."[2] *See A. M.*, 333 Or App at 462-65. That left the second factor: the probable value that an in-person hearing would add to reaching an accurate decision. Neither party offered any evidence on

---

[1] As we noted in our original opinion, we do not understand appellant to be arguing that due process always requires in-person civil commitment hearings or that witnesses must always appear in person at those hearings. Rather, appellant's due process argument, as we understand it, turns on the Presiding Judge's decision to automatically require remote hearings even when there is no particularized need that would justify proceeding remotely.

[2] Given the Presiding Judge's order, the state has not relied on a particularized need, such as the COVID-19 pandemic, to justify holding remote civil commitment hearings.

that issue at trial, and all they could do on appeal was to advance competing arguments unsupported by any record evidence. Not surprisingly, the state argued that the probable value that an in-person hearing would add to reaching an accurate decision was minimal while appellant argued otherwise.

Faced with those arguments, we remanded the case to the circuit court for an evidentiary hearing on the issues that the second *Mathews* factor poses. *Id.* at 465-67. In its petition for reconsideration, the state reasons that our opinion can and should be read for the proposition that, in light of the current state of videoconference technology, "remote hearings [can] result in factfinding that is just as accurate as in-person hearings." And it proposes that the only factual issue to be litigated on remand is whether the particular videoconference technology used in Clackamas County is "adequate." In moving for reconsideration, the state asks us to clarify whether we intended only a limited factual inquiry on remand.

We read our opinion differently. We did not seek to limit the parties' evidence on remand, beyond requiring that the evidence be relevant to the second *Mathews* factor. If appellant agrees with the state that remote hearings using the current videoconference technology can result in factfinding that is as accurate as in-person hearings, then the parties can start from that premise and proceed to subsidiary issues. If, however, appellant takes the position that, in light of the issues typically at play in civil commitment proceedings, in-person hearings lead to more accurate determinations than remote ones, nothing in our opinion precludes appellant from offering expert testimony, learned treatises, or other evidence that bears on that issue in the hearing on remand.

Sometimes, courts consider familiar procedures, such as the ability to call witnesses, in deciding whether due process requires those procedures in specific types of hearings. *See, e.g.*, *Wolff v. McDonnell*, 418 US 539, 566, 94 S Ct 2963, 41 L Ed 2d 935 (1974) (considering whether due process requires that prisoners be able to call witnesses in prison disciplinary hearings). In those instances, the benefits

that the requested procedure adds to reaching an accurate determination are well understood. Videoconferencing technology, by contrast, is relatively new, and we cannot take judicial notice that civil commitment hearings using that technology will or will not produce as accurate a determination as in-person hearing. Additionally, as the state notes, there are always subsidiary issues regarding the benefits and limits of the specific technology used.

Our original opinion contemplated that, on remand, the parties could offer evidence on all the issues raised by the second *Mathews* factor. It did not require them to address only a subset of those issues, nor did it preclude them from doing so. Rather, it left the parties free, consistently with the rules of evidence and the trial court's guidance, to offer testimony and other evidence that, in their view, bears on the second *Mathews* factor. Given that understanding of our original opinion, we adhere to it.

Reconsideration allowed; opinion adhered to.