Argued and submitted May 18, reversed and remanded August 12, 2009

In the Matter of G. N.,
Alleged to be a Mentally Ill Person.

STATE OF OREGON,
*Respondent,*

*v.*

G. N.,
*Appellant.*

Umatilla County Circuit Court
MC010006C; A135696

215 P3d 902

Michael A. Breiling argued the cause and filed the brief for appellant.

Rene C. Holmes, Senior Assistant Attorney General, argued the cause for respondent. With her on the brief were John R. Kroger, Attorney General, and Rolf C. Moan, Acting Solicitor General.

Before Wollheim, Presiding Judge, and Brewer, Chief Judge, and Riggs, Senior Judge.

BREWER, C. J.

**BREWER, C. J.**

In this mental commitment case, appellant appeals a judgment committing him to the Mental Health Division for a period of time not to exceed 180 days. ORS 426.005. The trial court found that appellant is mentally ill and is a danger to himself and others. On appeal, appellant assigns error to the trial court's denial of his request that he and his counsel be permitted to be physically present in the courtroom during the mental commitment hearing. As explained below, we conclude that, although in most respects, the conduct of a mental commitment hearing is left to the sound discretion of the trial judge, the court abused its discretion in conducting the hearing in the manner it did in this case.

Before the hearing, the court entered an order requiring the hearing to be held in one of the courtrooms "via video." Counsel for appellant objected to the trial court's denial of his request that appellant be transported to the courthouse for the hearing. Counsel for appellant appeared via video with appellant, as did a certified court interpreter and at least one of the state's witnesses. The judge, the prosecutor, and the remaining witnesses appeared in the courtroom.

Appellant's counsel argued to the court that requiring appellant to appear by video was not authorized by ORS 426.095(1)—which specifically pertains to the conduct of mental commitment hearings—or by any other statute. Counsel argued that his and appellant's actual presence in the courtroom was important for various reasons, including the need to assess the credibility of witnesses. He further noted that, although he could see and hear via the video screen, he was unable to see the judge clearly. The court denied counsel's motion to permit appellant to be personally present for the hearing. Shortly thereafter, and before the hearing began, counsel stated to the court, "I can't see and hear you." Moreover, before the hearing began, the state offered into evidence Exhibit 001, which was referred to as medical records. Counsel for appellant objected to the admission of Exhibit 001, noting that the records in question had not been provided to counsel and that counsel therefore had not had an opportunity to review them. Counsel stated, "I

don't know if the records [that] have been sealed and are provided to the court are in fact the records that we have[.]" Counsel then requested that the court transmit the records via facsimile to him. The court denied the motion, stating that counsel had had an opportunity to view any records at the state hospital and "[t]o the extent that you have or have not is you and your client's business." The court then conducted the hearing, during which various witnesses were called to testify, both in the courtroom and at the hospital. After the hearing, the court found appellant to be mentally ill and a danger to himself and others.

On appeal, appellant assigns error to the trial court's refusal to allow him to be personally present at the courthouse during the hearing. Appellant asserts that, because no statute authorizes the conduct of a mental commitment hearing via video and over the objection of a party, the trial court erred as a matter of law in conducting the hearing in that manner.

The state replies that trial courts have broad discretion in managing their courtrooms and that the court's choice in how to conduct the hearing should be reviewed for abuse of discretion. The state relies on ORS 3.220(1) for the proposition that a court may take steps to ensure the "prompt and orderly dispatch of the business of the court." We understand the state to suggest that, although no statute expressly authorized the court's action in this case, the court had inherent authority to conduct a mental commitment hearing via video from a different location than that of the allegedly mentally ill person, and despite that person's objection. *See, e.g.,* *State ex rel Coastal Management v. Washington Cty.,* 178 Or App 280, 288, 36 P3d 993 (2001), *rev den,* 334 Or 190 (2002) ("[T]he doctrine of inherent judicial authority is the source of power to perform a judicial function for which the legislative branch failed to provide fully[.]").[1]

---

[1] We have suggested, in various contexts, that a trial court's exercise of inherent authority is reviewed for abuse of discretion. *See Zimmerman v. State of Oregon,* 191 Or App 52, 57-58, 79 P3d 910 (2003) (exercise of inherent authority to dismiss post-conviction petition was reviewed for abuse of discretion); *City of Canby v. Rinkes,* 154 Or App 364, 369, 961 P2d 291 (1998) (exercise of inherent authority to correct judgment was reviewed for abuse of discretion).

■■  ORS 3.220 does not govern the situation presented here. ORS 3.220(1) provides:

> "A circuit court may make and enforce all rules necessary for the prompt and orderly dispatch of the business of the court and not inconsistent with applicable provisions of law, the Oregon Rules of Civil Procedure or rules made or orders issued by the Chief Justice of the Supreme Court or the presiding judge for the judicial district. If a majority of the judges of the court in a judicial district having two or more circuit court judges do not agree in respect to the making of rules under this subsection, the decision of the presiding judge shall control."

That statute accords rulemaking authority to circuit courts. The state, however, has pointed to no rule promulgated pursuant to that statute—or any other statute for that matter— that authorizes a court to require an allegedly mentally ill person to appear at a mental commitment hearing via video rather than in person, despite the objection of the allegedly mentally ill person.[2] However, this is not, as the state assumes, a situation in which the doctrine of inherent authority must be invoked because the legislature failed to "provide fully" the power for the court to perform a necessary judicial function. *State ex rel Coastal Management*, 178 Or App at 288.

ORS 426.095(1) specifically addresses the locations at which mental commitment hearings may be held: "The hearing may be held in a hospital, the person's home or in some other place *convenient to the court and to the allegedly mentally ill person*." (Emphasis added.) That statute does not specifically prohibit the court from conducting a hearing from one location (the courthouse) with participation by others from a different location (such as a hospital) via videoconferencing. Thus, to the extent that appellant suggests that any type of video participation in a mental commitment proceeding is *per se* prohibited, we disagree. The statute affords a considerable amount of flexibility to trial courts in conducting mental commitment proceedings.

---

[2] In fact, as appellant points out, the Uniform Trial Court Rules contain a provision concerning teleconferencing, but that provision pertains to situations in which a court is hearing "a motion not requiring testimony[.]" UTCR 5.050(2).

The statute does, however, contain one significant constraint on what the court may do in choosing a location or locations for the hearing. The location or locations must be "convenient" not only to the court, but also "to the allegedly mentally ill person." The term "convenient," as used in this context, means "suited to the needs or the circumstances of a particular situation." *Webster's Third New Int'l Dictionary* 497 (unabridged ed 2002). In this case, counsel for appellant made it clear that his and his client's location at the hospital, while the judge and opposing counsel remained at the courthouse, was not convenient. In particular, counsel noted that he was unable to see the judge clearly on the video screen. At one point, counsel also said that he was having trouble hearing the judge. Finally, counsel objected to the trial court's receipt into evidence of an exhibit that he had no opportunity to review (and that the court declined to send to him via facsimile).

An assessment of what is convenient for purposes of ORS 426.095(1) appears to be the type of determination that is within the sound discretion of the trial court. That is, the statute contemplates that the court should consider both the convenience to the court and the convenience of the allegedly mentally ill person. We conclude that, under that statute, it is within the court's discretion to weigh the convenience to the mentally ill person against the convenience of the court when choosing the location or locations of a mental commitment hearing.

■     On appellate review, the "abuse of discretion standard tests only whether the trial court made a decision within the permissible range of choices[.]" *State v. Hewitt*, 162 Or App 47, 52, 985 P2d 884 (1999), *rev dismissed*, 330 Or 567 (2000). In the circumstances presented here, we conclude that the court's choice to conduct the hearing in the manner that it did was outside the permissible range of choices. Here, counsel for appellant made numerous arguments as to why the video setup was not convenient. He could not see the judge clearly and could not assess the credibility of witnesses personally; he could not hear the judge at one point; he could not examine exhibits offered by the state. All appear to be valid concerns.

By contrast, the record contains nothing to suggest why the trial court might have found its own convenience to outweigh the convenience of appellant here. We can assume, given the circumstances, that the court found it more convenient to conduct the hearing from the courthouse, a location where the court, as well as the district attorney, generally conduct their business. No reason was given why transporting appellant to the courthouse or making some other accommodation would have been inconvenient for the court. In *EMC Mortgage Corp. v. Davis,* 174 Or App 524, 527, 26 P3d 185 (2001), we concluded that a trial court abused its discretion under somewhat analogous circumstances. There, a plaintiff had requested that the judgment in its favor provide that a writ of execution could be issued more than 60 days after entry of judgment, as permitted by a specific statute that gave the court discretion to do so. The plaintiff gave cogent reasons for its request. The court denied the plaintiff's motion without explanation. *Id.* at 526-27. We acknowledged on appeal that the statute in question gave the court discretion on whether to authorize a writ of execution more than 60 days after the judgment, but continued:

> "Although we review the trial court's decision for abuse of discretion, a court can 'abuse' its discretion in different ways, depending on the circumstances; thus, the term has no hard and fast meaning. *Liberty Northwest Ins. Corp. v. Jacobson,* 164 Or App 37, 45-46, 988 P2d 442 (1999). A familiar but non-exclusive test for determining whether discretion has been abused is whether the decision reached was 'clearly against reason and evidence.' *Id.*

> "A court abuses its discretion, for example, when the relevant evidence is undisputed and does not rationally support the decision the court made. *See Lambert v. American Dream Homes Corp.,* 148 Or App 371, 377, 939 P2d 661 (1997) (holding that, where the relevant facts were undisputed, the only question for review was whether there was any evidence or reason to support a dismissal for want of prosecution). That is the case here. At trial, defendant admitted that he had devised and executed a strategy to delay his eviction. That strategy had been carried out successfully in prior proceedings. In view of defendant's stated intent to appeal the judgment in this case—and to post an undertaking that undoubtedly would prevent enforcement

of the judgment for more than 60 days—his strategy was destined to succeed again in this case unless the court extended the period for enforcement. Under the circumstances, the judgment of restitution offered plaintiff a hollow victory.

"* * * The trial court articulated no reason, based on any particular circumstances of the case, for denying plaintiff's request. Nor can we discern one. Defendant did not contend that extension of the judgment enforcement period would have caused any prejudice beyond terminating his ability to forestall eviction. Under the circumstances, the court's decision was not supported by reason or the undisputed evidence. Therefore, the court abused its discretion in refusing to permit enforcement of the judgment more than 60 days after its entry."

*EMC Mortgage Corp.*, 174 Or App at 528. Similarly here, counsel for appellant presented cogent reasons for his request; the trial court articulated no reason for denying it. Under those circumstances, we conclude that the trial court abused its discretion by conducting the mental commitment proceeding in locations that were not convenient for appellant, in violation of ORS 426.095(1).

The state argues, nonetheless, that this court should affirm the trial court's order of commitment, because any error in conducting the hearing in the manner it did was necessarily harmless. Article VII (Amended), section 3, of the Oregon Constitution " 'requires this court to affirm judgments of lower courts if, in the opinion of this court, the judgment achieved the correct result, even if error was committed.' " *State v. Bowen*, 340 Or 487, 500, 135 P3d 272 (2006), *cert den*, 549 US 1214 (2007) (quoting *State v. Affeld*, 307 Or 125, 128, 764 P2d 220 (1988)). A lengthy discussion of the state's argument is not called for here. Suffice it to say that, in this case, the evidence in support of commitment was not exceptionally strong, and the error we have identified, which undermined counsel's ability to participate meaningfully in the hearing, was a significant error. Under these circumstances, error was committed, and we are unable to conclude that the judgment achieved the correct result.

Reversed and remanded.