Submitted October 4, 2022, affirmed March 29, 2023

STATE OF OREGON,
*Plaintiff-Respondent,*

*v.*

CODY ALLEN PEREZ,
*Defendant-Appellant.*

Lincoln County Circuit Court
21CR11615; A176352

528 P3d 318

Defendant appeals a judgment of conviction arguing that the trial court erred by requiring defendant to wear restraints during his bench trial and by failing to free one of his hands from the restraints. *Held*: The trial court did not abuse its discretion when it required defendant to wear belly chains with handcuffs during his bench trial. The trial court held a pretrial hearing on the use of restraints and concluded that they were necessary based on the specific nature of defendant's prior convictions and the features of the courtroom. The decision not to free one of defendant's hands was not an abuse of discretion because defendant told the trial court that the restraints did not prevent him from writing notes. The record does not show that the restraints prevented defendant from communicating with his attorney or assisting in his defense.

Affirmed.

Sheryl Bachart, Judge.

Ernest G. Lannet, Chief Defender, Criminal Appellate Section, and Stephanie Hortsch, Deputy Public Defender, Office of Public Defense Services, filed the brief for appellant.

Ellen F. Rosenblum, Attorney General, Benjamin Gutman, Solicitor General, and E. Nani Apo, Assistant Attorney General, filed the brief for respondent.

Before Shorr, Presiding Judge, and Mooney, Judge, and Pagán, Judge.

PAGÁN, J.

Affirmed.

## PAGÁN, J.

Defendant appeals a judgment of conviction for offenses including fourth-degree assault, ORS 163.160, and unlawful entry into a motor vehicle, ORS 164.272. Defendant raises two assignments of error, both relating to the use of restraints during his trial. First, defendant claims that the trial court erred by requiring him to wear restraints during his bench trial. Second, defendant claims that the trial court erred by failing to free one of his hands from the restraints. We conclude that the trial court did not abuse its discretion in either respect. We therefore affirm.

On March 8, 2021, police responded to reports of a man flagging down traffic and assaulting a driver on Highway 101 near Newport. When police arrived, they encountered defendant struggling with a driver, and they arrested defendant. While being transported to jail, defendant attempted to kick out the window of a patrol car.

The following day, on March 9, 2021, the district attorney filed an information charging defendant with various offenses, including assault. The sheriff's office filed a document called "Support of Restraints in Court Proceedings." In the document, the sheriff's office recommended courtroom restraints based on defendant's criminal history, which included arrests and/or convictions for resisting arrest, disorderly conduct, interfering with a police officer, domestic violence or a "FAPA violation," "Failure to Appear/Escape/Att. Escape," and "Assault/Cr. Mistr./Harassment." The trial court entered an order permitting the sheriff to use "[b]elly chains with handcuffs" during all court hearings.[1]

At his pretrial hearing on May 5, 2021, defendant waived his right to a jury trial. At that same hearing, the trial court addressed restraints. The trial court noted that "an initial restraint decision was made in this case when [defendant] was arraigned." The district attorney argued that he would be "distracted" if defendant was not restrained. The district attorney alluded to "the facts of the

---

[1] There is no transcript of the court proceedings from March 9, 2021, which included defendant's initial arraignment. That proceeding was not designated as part of the appellate record.

case and *** what he did to my victim, *** [and] there's not a jury here. I know the Court's not going to be influenced by the fact that he's *** in restraints." The district attorney continued, "Granted, we'll have deputies here. *** I would like to see him in restraints, but if the Court doesn't want that, I think as long as we have deputies close to him. But I'd just rather not be distracted by looking out of the corner of my eye."

The trial court sought input from a jail deputy, who indicated that defendant's "behavior has been pretty good. There was one report I saw where a deputy felt *** threatened and disrespected, but other than that his behavior has been pretty good while he's been here." Defendant's appointed counsel described defendant as "very cordial, always very calm."

After considering that information and the arguments presented, the trial court ordered restraints to be used. The trial court was "concerned about *** the criminal history he has. Pretty extensive criminal history of violent *** assaults *** and at least two felony convictions for *** violence against correctional staff, which is why I'm concerned." The trial court pointed out that officers and a victim would be testifying "in close proximity" to defendant. The trial court concluded that "for the safety of everyone, I think *** it's best, especially with no jury present, that he be restrained."

Addressing defendant, the trial court added that "if at any point in time those *** restraints are interfering with your ability to concentrate, *** if you're in pain, if you're uncomfortable, you need to let me know right away, *** and we can make changes. Because I don't want the fact that you're restrained to have any *** impact on your ability to pay attention to the trial *** and talk with [defense counsel]. Um, so let me know if there are any problems *** when we get started ***."

Ultimately, a different judge presided at defendant's bench trial.[2] At the beginning of the proceedings, that judge

_____

[2] The judge who presided at the bench trial was the same judge who signed the initial order, on March 9, 2021, permitting the use of restraints.

noted that defendant was "dressed in street clothes," and that defendant had wrist restraints that went around his waist. The trial court stated that it did not want to interfere with defendant's ability to concentrate or talk with defense counsel. Counsel for defendant asked the trial court to reconsider the use of restraints because, as a result of "COVID and social distancing," defendant needed to be able to write notes to his attorney.

The trial court asked defendant whether he could write with the restraints. Defendant replied that he "could write small amounts," but he expressed concern about the trial proceeding too fast for him to do so. The trial court responded that it could "slow things down," and if "there's any point you need to write something, tell [defense counsel]. Because *** I don't want to do anything here that restricts your ability to keep notes or to be able to talk with [defense counsel] privately." The trial court encouraged defendant to "just speak up."

During the trial, there were occasions when defendant disrupted the testimony of a witness. The record does not show that defendant took notes, made a request for the proceedings to slow down, or that he needed additional time to discuss matters with his attorney. Defendant testified at his bench trial. At one point during his testimony, defendant mentioned that he could not show the court how he waved at a driver because of his handcuffs.

The trial court acquitted defendant on two counts and found him guilty of the remaining charges. The trial court heard arguments regarding enhancement facts and indicated that it would need additional time before sentencing. Defendant became irate and disruptive, demanding that he be sentenced immediately. The sentencing hearing occurred about two weeks later. Defendant appeals his judgment of conviction.

We review a trial court's order requiring restraints for an abuse of discretion. *State v. Washington*, 355 Or 612, 629, 330 P3d 596 (2014), *cert den*, 574 US 1016 (2014). "The right of an accused to be free from physical restraint during a criminal trial has common-law and constitutional underpinnings." *State v. Wall*, 252 Or App 435, 437, 287 P3d 1250

(2012), *rev den*, 353 Or 280 (2013). The right "is grounded in Article I, section 11, of the Oregon Constitution *** and in the Sixth Amendment to the United States Constitution." *Washington*, 355 Or at 628. "[T]he use of physical restraints can impinge on the presumption of innocence to which a defendant is entitled and may also impair a defendant's ability to participate in his or her defense, such as by consulting with counsel or by taking the stand as a witness." *Id*. In addition, physical restraints may impinge "on the defendant's Fifth Amendment and Due Process rights against self-incrimination by mute testimony of a violent disposition." *State v. Moore*, 45 Or App 837, 839, 609 P2d 866 (1980).

However, the right to be free from restraints during trial is not absolute. *State v. Osborn*, 315 Or App 102, 108, 499 P3d 61 (2021). "[A] trial court has discretion to order physical restraint of a defendant if there is sufficient evidence of a substantial risk of dangerous or disruptive behavior, including the risk of assaultive conduct toward other persons and the risk of an attempted escape from custody." *Washington*, 355 Or at 628. The trial court should hold a hearing, and it "must make a record of its factual findings and reasoning in support of its order." *Id*. "Also pertinent to the inquiry is the extent to which a defendant establishes that the use of restraints interfered with his or her ability to participate with counsel in the defense of his case." *Id*. at 629.

Here, the record was sufficient to conclude that the court did not abuse its discretion when it required that defendant should wear belly chains with handcuffs during his bench trial. Before trial, there was a hearing on the use of restraints. The trial court received input from a jail deputy, the state and defense counsel. In its ruling, the trial court focused not only on defendant's criminal history but also on the specific nature of his prior convictions, noting that defendant had an "extensive criminal history of violent *** assaults and behavior," including "at least two felony convictions for *** violence against correctional staff." Those specific convictions were concerning because, at his bench trial, officers and a victim of defendant's alleged assault would be testifying in close proximity to defendant. The trial court encouraged defendant to let the court know if the restraints

were interfering with his ability to concentrate or talk to his attorney. Based on that record, we cannot say that the trial court abused its discretion. *See Washington*, 355 Or at 630 (finding no abuse of discretion in the trial court's decision to require restraints).

The instant case is not like *Osborn*, 315 Or App at 108, in which the trial court "made no inquiry into defendant's past criminal history or any basis for concluding that she posed any risk." In *Osborn*, the trial court simply deferred to the sheriff's "blanket restraint rule," and made no "independent determination that restraint was justified." *Id.* at 108, 110. By contrast, here, the trial court made an independent determination based on factors including the specific nature of defendant's prior convictions.

We recognize that not "every defendant charged with crimes involving violence should be considered an immediate and serious security risk." *State v. Kessler*, 57 Or App 469, 474, 645 P2d 1070 (1982). But here, the trial court had a particularized basis for concern because defendant had prior convictions for assault against correctional staff in a case in which he would be testifying in close proximity to an alleged assault victim and to the officers who arrested him. *See Wall*, 252 Or App at 439 ("We examine the trial court record to determine if there is evidence providing a particularized basis to require a defendant to wear restraints.").

Defendant argues that the trial court's concern about his "close proximity" to others "appears to be nothing more than an acknowledgment that defendant would be in the courtroom during his trial, which of course is his constitutional right." But defendant downplays the significance of the trial court's concern, which pertained to "the features of the courtroom," thereby implicating "the security of the proceedings." *Washington*, 355 Or at 629. Generally, we do not second guess a trial court's assessment of its security needs. *Moore*, 45 Or App at 840; *see State v. Guzek*, 358 Or 251, 270, 363 P3d 480 (2015), *cert den*, ___ US ___, 137 S Ct 1070 (2017) ("The trial court reasonably inferred a risk of danger, disruption, or escape from the conduct that resulted in defendant's convictions * * * and the state's representations

about the size of the courtroom and the concerns of trial participants.").

Alternatively, defendant argues that the trial court erred when it refused to free defendant's "dominant hand" at the beginning of his bench trial so that he could write notes to his attorney. Defendant contends that the restraints were not the least restrictive means for maintaining security. But here, when considering the request to free one of defendant's hands, the trial court asked defendant whether he could write with his restraints. Defendant responded that he could do so, but he expressed concern about the proceedings moving too fast. The trial court encouraged defendant to speak up if that occurred. Based on defendant's response, we discern no abuse of discretion in the trial court's decision not to free one of defendant's hands. *See Guzek*, 358 Or at 270 ("Whether a particular type of restraint is justified depends on the risk of prejudice that the restraint presents and the risk of danger, disruption, or escape that the defendant poses." The trial court's decision about the type of restraint requires "an exercise of discretion[.]").

Finally, defendant contends that the restraints constrained his "freedom to gesture and express himself during his testimony." When describing how he encountered the driver with whom he struggled, defendant testified, "I was right on the edge of [the road], and I put—I can't really show you with, with the cuffs. But I put my hand out like waving, waving." Defendant claims that the trial court should have freed his hand, but we are not convinced that defendant's inability to demonstrate how he waved "impeded in his effort to assist in his defense." *Washington*, 355 Or at 630.

Affirmed.