No. 921 December 26, 2024 5

IN THE COURT OF APPEALS OF THE
STATE OF OREGON

In the Matter of J. J. S.,
a Person Alleged to have Mental Illness.

STATE OF OREGON,
*Respondent,*

*v.*

J. J. S.,
*Appellant.*

Deschutes County Circuit Court
23CC02325; A181346

Owyhee Weikel-Magden, Judge pro tempore.

Submitted March 20, 2024.

Christopher J. O'Connor and Multnomah Defenders, Inc., filed the brief for appellant.

Ellen F. Rosenblum, Attorney General, Benjamin Gutman, Solicitor General, and E. Nani Apo, Assistant Attorney General, filed the brief for respondent.

Before Aoyagi, Presiding Judge, Egan, Judge, and Joyce, Judge.

EGAN, J.

Affirmed.

**EGAN, J.**

The trial court committed appellant to the custody of the Mental Health Division for a period not to exceed 180 days after finding that he suffered from a mental disorder and posed a danger to others. Appellant raises four assignments of error. His first two are interdependent: (1) that the trial court erred in denying his motion to have the hearing at a place convenient to him and (2) that the trial court denied his objection to being shackled during the hearing. We review those together. In his third assignment, appellant argues that the trial court erred in finding that he was a person with a mental disorder who was a danger to others. In his last assignment, he asserts that the trial court erred by prohibiting him from purchasing or possessing a firearm in violation of the Second Amendment to the United States Constitution. We affirm.

CONVENIENT SETTING AND USE OF RESTRAINTS

In his first assignment of error, appellant argues that the trial court erred by "making a decision to hold the hearing at a place not convenient" for him, thus violating ORS 426.095. At the hearing, appellant's counsel first made a substantive due process objection that his restraints were impermissible and inappropriate, and then counsel stated:

> "But I think the—really the most important part here is ORS 426.095(1), which say[s] that the hearing may be held in a hospital, the person's home, or in some other place convenient to the court and the person alleged to have a mental illness. This setting is not convenient for [appellant] in any means. *** And having these hearings with an individual in full restraints in the Deschutes County Courthouse is not convenient."

At the time appellant made his objection, he had already been transported from the hospital to the courtroom, and it appears that appellant did not object to the setting until it became clear that he would be shackled during the proceeding. Specifically, appellant argued that holding the hearing in the courtroom was inconvenient because it put him in "a heightened state as a result of [his] transport in full restraints," and keeping appellant in those full restraints would not "give the court an accurate perspective as to how

[appellant] would react at the hospital in a day to day setting in the public." Appellant further argued that the hearing should be held in the hospital, which "would be certainly way more convenient than the current setting when considering specifically those restraints." In the alternative, appellant asked that the court order the appellant's restraints to be removed.

Appellant renews those arguments on appeal. In response, the state argues that the "last minute request" for a change of setting for the proceeding was based wholly on appellant's "desire to avoid wearing restraints during the hearing." The state relies on the inquiry under ORS 426.095(1) to contend that the trial court properly balanced the convenience for the court against the convenience for appellant and that "the court could reasonably conclude that appellant's interest in not wearing restraints did not outweigh the inconvenience of postponing the hearing." The state emphasizes this latter point by noting that appellant's motion for a more convenient setting occurred the morning of the hearing after everyone was already in the courtroom and ready to proceed; thus, the inconvenience to the trial court of postponing the proceeding was high, while, in its view, the burden on appellant, at that point in the proceeding, was minimal. The state also argues that trial courts have broad discretion to impose necessary security measures, and "[g]enerally, we do not second guess a trial court's assessment of its security needs." *State v. Perez*, 325 Or App 64, 69, 528 P3d 318 (2023) (citing *State v. Moore*, 45 Or App 837, 840, 609 P2d 866 (1980)).

We begin by recounting the initial record of the trial court's brief assessment of security needs:

"THE COURT: *** Before we get started, let's address restraints. Deputy, may I hear from you; what you're asking for in your summary, please?

"DEPUTY: Your Honor, we're asking for full restraints this morning. He has been diagnosed with schizophrenia. He's homicidal and suicidal. He has stabbed himself, he has stabbed others, and is an extreme danger. So, we believe that full restraints are necessary today."

The trial court then inquired if the alleged behaviors were relatively recent in time, to which the deputy said, "Yes."

The deputy also reported that "[appellant] yelled at us a couple times" on the way to the court. After a lengthy argument from appellant's trial counsel, the trial court ruled that the restraints would remain in use without stating its specific reasoning.

It is within a trial court's discretion to "weigh the convenience to the mentally ill person against the convenience of the court when choosing the location or locations of a mental commitment hearing." *State v. G. N.*, 230 Or App 249, 254, 215 P3d 902 (2009). In *G. N.*, we determined that the trial court abused its discretion in refusing the appellant's request to be physically present for his commitment hearing, thus forcing the hearing to be conducted via video. *Id.* at 905-06. That holding turned, in part, on the fact that "the record contain[ed] nothing to suggest why the trial court might have found its own convenience to outweigh the convenience of [the] appellant." *Id.* at 255. Further, we considered the fact that "[n]o reason was given why transporting appellant to the courthouse or making some other accommodation would have been inconvenient for the court." *Id.*

As our holding in *G. N.* suggests, we have recognized the substantial deprivation of liberty that a civil commitment proceeding implicates and that the location of the hearing implicates due process. *See State v. A. M.*, 333 Or App 453, 461, 465-67, 553 P3d 593 (2024) (where the appellant argued that her due process rights were violated by a county-wide policy of holding civil commitment proceedings remotely, recognizing that the *Mathews v. Eldridge*, 424 US 319, 335, 96 S Ct 893 (1976) factors are the appropriate measure of the permissibility of a court's choice of location for a civil commitment hearing).

In this case, however, we conclude that the trial court permissibly exercised its discretion in determining that the needs of judicial efficiency outweighed appellant's interest in having the hearing held at a place more convenient to him. Unlike the record in *G. N.*, which we noted was undeveloped as to all of the relevant considerations, the record before us contains at least some information as to the trial court's security concerns. Further, there is a crucial

temporal difference between *G. N.* and this case: Here, the objection to the location was not made until all parties were present in the courtroom and ready to proceed.

Appellant was thus functionally asking the trial court to stop the proceeding as it was about to begin, transport him back to the hospital, and then resume the proceedings remotely or with the court at the hospital. Appellant did not make a record that he would not need to be restrained in the hospital setting, if transported back at that time. Further, given that appellant had already suffered the detriment of being transported in full restraints, it is not clear how much of an additional burden appellant suffered from continuing with the hearing at that time, as opposed to proceeding within a feasible period of time after his return to the hospital. We note that the court was under a statutory obligation to hold the hearing within five judicial days of citation, ORS 426.095(2)(a), and the day of the hearing was the third of those judicial days.

Given that stopping the proceedings at that point would have had very significant consequences for the judicial process, the trial court did not abuse its discretion in determining that it would be better to proceed in person, and with restraints, than to reschedule the hearing for another time and place. Accordingly, we reject appellant's first assignment of error.

In his second assignment of error, appellant contends that the trial court erred by denying his request to not be shackled during the hearing. Appellant's argument depends on the understanding that the trial court wholly deferred to the deputy's opinion that appellant should be restrained when making the decision to keep the restraints on. We disagree. At the outset of the hearing, the trial court heard from the deputy, asked follow-up questions, and allowed argument from appellant's trial counsel. The trial court's subsequent determination that it was "going to ask that the restraints stay on" during the proceeding appears to have taken all of the information and arguments into account. In our view, the court made its own determination about the need for restraints; it did not impermissibly adopt the deputy's conclusion. Based on this record and the

arguments presented, we conclude the trial court did not err.

## DANGER TO OTHERS

Appellant argues that there is insufficient evidence on the record to support a finding of dangerousness to others under the clear and convincing evidentiary standard. In support of that argument, appellant first notes the volume of testimony stricken from the record due to hearsay concerns, arguing that it severely limits the record from which the trial court could have made its decision. Further, appellant contends that much of the remaining testimony is highly speculative as to whether "actual future violence is highly likely," *State v. M. A.*, 276 Or App 624, 629 P3d 495 (2016), because the instances in which appellant exhibited behaviors that put others in danger are inconsistent and relatively remote in time. In response, the state details appellant's long history of struggling with a mental illness, his prior lack of adherence to medication regimens, and his subsequent decompensation that has resulted in violent episodes. The state would have us find that the record was sufficiently developed to make a finding of dangerousness or, in the alternative, that we reconsider the narrow definition of "dangerous," namely by overruling our decision in *State v. S. R. J.*, 281 Or App 741, 386 P3d 99 (2016).

Pursuant to ORS 19.415(3), unless we exercise our discretion to review the matter *de novo*, we are bound by the trial court's findings of historical fact that are supported by any evidence in the record. *State v. B. B.*, 240 Or App 75, 77, 245 P3d 697 (2010) (applying the statutory standard); *see also S. R. J.*, 281 Or App at 743 (we only exercise our discretion review *de novo* in exceptional cases (citing ORAP 5.40(8)(C))). Defendant does not request *de novo* review. This is not an exceptional case, and we do not exercise our discretion to engage in *de novo* review.

Below, the court found that the state had proven by clear and convincing evidence that appellant had a mental illness which caused him to be a danger to others. *See State v. J. D. S.*, 242 Or App 445, 447, 263 P3d 1017 (2011) (stating that the clear and convincing evidence standard,

which dictates the state's burden of proof in this case, is "the degree of certainty that must exist in the mind of the fact-finder"). On appeal, we do not reinspect evidence to make the factual determination of whether appellant was a danger to others. Rather, we consider the sufficiency of the evidence "in the light most favorable to the state to determine whether any rational trier of fact, accepting reasonable inferences and credibility choices, could have found appellant to be a danger to [others] by clear and convincing evidence." *Id.* at 448; *see also State v. C. L.*, 313 Or App 539, 542, 459 P3d 748 (2021) ("Whether the evidence is sufficient to support a determination that appellant is a danger to others is a question we review as a matter of law."); *S. R. J.*, 281 Or App at 741 (applying the legal sufficiency standard to determine whether the appellant was a danger to herself and others). In the absence of any express findings by the trial court, we examine the facts "consistently with the trial court's * * * implied findings" and in the light most favorable to the state. *State v. D. R.*, 239 Or App 576, 579, 244 P3d 916 (2010); *see also B. B.*, 240 Or App at 82 (a determination of dangerousness may be based on "evidence of appellant's conduct, viewed most favorably to the state").

The deprivation of liberty attendant to a civil commitment is significant, and "the fact that such a preventative confinement is predicated on a prediction of future behavior" demands a minimum evidentiary standard that is not based wholly on speculation. *D. R.*, 239 Or App at 582-83; *see also State v. Lucas*, 31 Or App 947, 950, 571 P2d 1275 (1977) (establishing that the state must show that a past violent act "clearly forms the foundation for a prediction of future dangerousness" if it seeks to rely on a past act to establish a present danger to self or others).

Appellant has schizophrenia, characterized by significant auditory hallucinations that seem to influence his choices and behaviors. At the time of the hearing, he had very little insight into his condition, had been off his medication for two months, and had severely decompensated.

The record reflects that appellant has a history of decompensation and violence when he does not take his prescribed medications to treat his mental disorder. In the

earliest episode on this record, in 2017, appellant was civilly committed for posing a danger to others for grabbing his mother, restraining her, injuring her leg, and verbally threatening her. In early December 2020, appellant punched a cab driver, based on his belief that the driver was a demon.

The most recent episode, which resulted in the civil commitment at issue here, began a week before the hearing. Appellant was placed on a hold at St. Charles Medical Center in Redmond for "responding to internal stimuli," which included hitting himself, punching walls, and hiding knives in his bed. His mother further testified that she found knives in his bed on three separate occasions, and she expressed fear that he may harm himself or someone else if not stabilized, reporting that, were he to be released, she could not guarantee that he would take his medications.

When asked about the potential dangerousness of appellant, one expert witness, a psychiatrist who worked with appellant episodically since 2017, stated:

> "Well, it's—it's been pretty clear that every time [appellant] is not treated for his disconnect with reality he has harmed people in the community, alright? Sometimes very seriously. And so if I look at this situation and I say is this any different from prior presentations, my answer to that question is no. So the logical step from that is what he did in the past, he will do in the future."

The same witness also stated that, while he did not know exactly when appellant would pose a danger to others, he had "no doubt that [appellant] will eventually cause harm to somebody else due to his psychotic state." Another state witness, the civil commitment team supervisor, further testified that she believed appellant was a danger to himself or others because of his "[s]ignificant history of decompensation" leading to past violent acts including incidents that took place in 2020, including defendant's attack on the cab driver.

As noted, appellant argues that the trial court's determination that he was a danger to others is not supported by legally sufficient evidence, though he does not contest that he has a mental disorder. We conclude that, based on the record in this case, a reasonable fact finder could find, by clear and convincing evidence, that appellant was a

danger to others. *See J. D. S.*, 242 Or App at 447 (applying the appropriate standard of review in the civil commitment context).

In *State v. D. L.*, 202 Or App 329, 335-36, 122 P3d 97 (2005), *rev den*, 340 Or 308 (2006), we concluded that there was sufficient evidence that the appellant was a danger to others where two mental health experts testified that the appellant "still harbored the paranoid fears" that led her to fire a gun in a previous instance. *Id.* at 335. Because those paranoid fears "remained present," the experts were able to predict that the appellant would again become violent. *Id.* at 335-36.

Similarly, in this case, appellant's past violent actions—while relatively remote in time—have consistently been the culmination of a period of medication noncompliance and subsequent decompensation, including delusions and hearing voices. We conclude that a reasonable trial court could find that it was highly probable that appellant would engage in violence against others based on the testimony regarding appellant's most recent pattern of behavior. That is, appellant was proceeding along the same trajectory that led to his prior violence: medication cessation, which caused delusions and hallucinations that, in turn, lead to injurious violence.

Further, appellant's mother—his primary care-taker whom he lives with—testified that he has been in a cycle for approximately 14 to 16 years of going into the state hospital during crises, stabilizing and being put on medication, being released, subsequently decompensating, and becoming violent.

While we agree with appellant's assertion that the record is not particularly robust due to hearsay issues and subsequently stricken testimony, the question before us is not one of factual density but of legal sufficiency. We thus conclude that the trial court did not err by finding that appellant was a danger to others.

## FIREARMS PROHIBITION

In his final assignment of error, appellant argues that there was insufficient evidence for the trial court to properly include in the judgment a firearm prohibition

under ORS 426.130(1)(a)(D). Additionally, appellant argues that the statute itself is unconstitutional. For the same reasons that we conclude that the evidence was sufficient to support the court's determination that appellant was a danger to others, the court did not err in finding that there was a reasonable likelihood that appellant "would constitute a danger to self or others or to the community at large" and therefore was prohibited from purchasing or possessing a firearm. ORS 426.130(1)(a)(D).

As to appellant's Second Amendment argument, we affirm for the reasons discussed extensively in *State v. H. N.*, 330 Or App 482, 492, 545 P3d 186 (2024) (finding ORS 426.130(1)(a)(D) facially constitutional in accordance with "this country's 'tradition' to disarm those who suffer from mental disorders, whether categorically or because they pose a danger to themselves or to others" (citing *New York State Rifle & Pistol Association, Inc. v. Bruen*, 597 US 1, 17, 142 S Ct 2111, 213 L Ed 2d 387 (2022))).

Affirmed.