390 June 10, 2026 No. 515

IN THE COURT OF APPEALS OF THE
STATE OF OREGON

In the Matter of P. F.,
a Person Alleged to have Mental Illness.
STATE OF OREGON,
*Respondent,*

*v.*

P. F.,
*Appellant.*

Deschutes County Circuit Court
25CC01826; A187241

Alycia M. Herriott, Judge.

Argued and submitted March 5, 2026.

Christopher J. O'Connor argued the cause for appellant. Also on the brief was Multnomah Defenders, Inc.

Baylee Seeman, Certified Law Student, argued the cause for respondent. On the brief were Dan Rayfield, Attorney General, Benjamin Gutman, Deputy Attorney General, and Colm Moore, Assistant Attorney General.

Before Tookey, Presiding Judge, Kamins, Judge, and Jacquot, Judge.

TOOKEY, P. J.

Reversed.

**TOOKEY, P. J.**

Appellant appeals a judgment of civil commitment and an order prohibiting the purchase or possession of firearms. In his second assignment of error, appellant challenges the trial court's decision to allow law enforcement to use restraints during the civil commitment hearing.

Addressing an issue of first impression, we hold that persons alleged to be mentally ill have a due process right to be free from physical restraints during civil commitment hearings absent a showing that they present an immediate and serious risk of danger or disruption.

Reviewing the record in light of that standard, we conclude that the trial court abused its discretion when it ordered full restraints during the hearing and that the error was not harmless. We therefore reverse the judgment and order.[1]

## I. FACTS

On March 25, 2025, appellant was placed on an emergency hold and a physician at St. Charles Medical Center in Redmond completed a notice of mental illness. According to the notice, appellant had "a long history of psychosis. He resided at the Oregon State Hospital for 20 years and was discharged to Juniper Canyon Residential [in] September 2024." Appellant was considered a danger to himself or others "due to experiencing agitated behavior, internal stimuli, threatening to fight other residents, posturing at staff and breaking items. He has refused all medication and psychiatric medications for about the last month."

A certified mental health investigator filed a report on March 28, determining that there was probable cause to believe that appellant had a mental disorder that made him dangerous to others and unable to meet his basic needs.

---

[1] Because we reverse on the second assignment, we do not address appellant's first assignment, in which he argues that medical records were not made available to the examiner and his attorney more than 24 hours before the hearing. We also do not reach appellant's argument under the second assignment of error that it was unlawful to confine him in a courthouse holding cell during a break or breaks in the hearing.

The report stated that appellant had been diagnosed with schizophrenia. The investigator learned from nursing staff that appellant had "been posturing to staff, making verbal threats," and that he had broken three iPads and head-phones. Based on the notice of mental illness and the investigation report, the court issued a citation and scheduled a civil commitment hearing.

Appellant, who was 72 years old, was brought to the hearing by sheriff's deputies in leg chains, handcuffs, and a belly chain or waistband restraint. Appellant's attorney requested the court to order removal of the restraints or for appellant not to be fully shackled. After reviewing a report filed by the sheriff's office, the trial court denied the motion and allowed the deputies to keep appellant in full restraints during the hearing.

At the hearing, and after he provided testimony, appellant requested to return to the hospital. Appellant clarified that he understood the hearing would continue in his absence, and the trial court permitted him to leave. While he was leaving, appellant stated that the restraints were hurting his legs. The deputy told him to "take small steps." When appellant asked whether they could be taken off, the deputy responded, "As soon as we get back to the hospital." Appellant asked for the restraints to be taken off sooner, but the trial court stated the deputy had "his own rules that he has to follow. I'm not sure what those are."

At the end of the civil commitment hearing, the trial court determined that appellant suffered from a mental disorder that made him dangerous to others. The court based its finding of dangerousness on "the overt acts that were described *** in the *** testimony such as the posturing, the balling of his fists, charging towards staff, and throwing objects in their direction. Those overt acts were combined with *** specific verbal threats of *** violence to those individuals." The trial court further explained that it had the opportunity to observe appellant in court and "he displayed a vehement anger during his testimony. He demonstrated *** aggression." The court found it "was escalating towards physical violence."

The court also found that appellant was unable to provide for his basic personal needs because he was "resistant to taking his medications as prescribed," he lost weight when living at the residential facility, and his condition was likely to deteriorate without intervention. The court stated that the symptoms of appellant's mental disorder were "irritability, disorganization, hallucinations, delusions, impulsivity, and [un]predictability," and it determined that there was a nexus between appellant's mental disorder, his dangerousness, and his inability to meet basic personal needs.

The trial court therefore committed appellant to the care of the Oregon Health Authority for a period not to exceed 180 days, and, because he "was reasonably likely to constitute a danger to self or others," the trial court also ordered that appellant was prohibited from purchasing or possessing firearms.

## II.  ANALYSIS

On appeal, appellant challenges the order requiring restraints during the civil commitment hearing. Appellant argues that the order violated his right to due process and his statutory rights. Although we endeavor to decide cases on statutory grounds before reaching constitutional issues, *State v. Mayo*, 303 Or App 525, 531 n 3, 465 P3d 267 (2020), the parties have not identified a statutory provision in ORS chapter 426 that directly addresses the use of restraints in a civil commitment hearing. We begin by considering statutory provisions that bear some relation to the use of restraints.

### A.  *Relevant Statutes*

Persons subject to involuntary commitment can pose a danger to themselves or others. *See* ORS 426.005 (1)(f)(A) (2023), *amended by* Or Laws 2025, ch 559, § 5 (defining a person with mental illness as a person who, because of a mental disorder, is dangerous to self or others).[2] ORS 426.140(1) provides:

---

[2] The legislature recently made significant amendments to the civil commitment statutes, which became operative on January 1, 2026. Or Laws 2025, ch 559, § 66. Appellant was committed under the previous version of the statutes. The new statutes also provide that posing a danger to themselves or others is a reason why persons alleged to have a mental illness may be in need of treatment. ORS 426.131(1).

> "A person, other than a person incarcerated upon a criminal charge, who has been adjudged to be a person with mental illness or against whom commitment proceedings have been instituted may not be confined in any prison, jail or other enclosure where those charged with a crime or a violation of a municipal ordinance are incarcerated, unless the person represents an immediate and serious danger to staff or physical facilities of a hospital or other facility approved by the Oregon Health Authority for the care, custody and treatment of the person."

That statute "requires that a civilly committed person be confined in a hospital, unless he presents such a danger to the hospital or staff that he must be confined in a prison." *Ray v. Bachik*, 101 Or App 507, 509, 791 P2d 150, *rev den*, 310 Or 281 (1990). For present purposes, the statute reflects an awareness that it may sometimes be necessary for trial courts to take precautions during a civil commitment hearing when "the person represents an immediate and serious danger." ORS 426.140(1).

ORS 426.385 describes the rights of persons committed to the Oregon Health Authority. One subsection of that statute provides that "[m]echanical restraints may not be applied to a person admitted to a facility unless it is determined by the chief medical officer of the facility or designee to be required by the medical needs of the person." ORS 426.385(4). Once again, that statute suggests a presumption against the use of restraints on mentally ill persons absent a showing that the restraints are necessary.

Persons with mental illness who are believed to be extremely dangerous are also subject to civil commitment. *See generally* ORS 426.701 (governing the procedures for seeking the commitment of persons with qualifying mental disorders who are determined to be "extremely dangerous"). The statutory provisions relating to their commitment and treatment refer to the constitutional right to due process. *See* ORS 426.701(2)(f)(B) ("Any order of the court concerning the placement of a person under this subparagraph must be in accordance with the person's constitutional right to due process."); ORS 426.701(5)(b)(A) (same). Because there is no statute directly on point when considering the use of restraints in civil commitment proceedings, we next consider

relevant constitutional provisions, including the right to due process.

### B.  *Constitutional Considerations*

In criminal cases, defendants have a right to appear free of physical restraints during jury trials, and that right is grounded in Article I, section 11, of the Oregon Constitution, the Sixth Amendment to the United States Constitution, and the Due Process Clause of the Fourteenth Amendment to the United States Constitution. *State v. Washington*, 355 Or 612, 628, 330 P3d 596 (2014). Neither Article I, section 11, nor the Sixth Amendment, apply in civil commitment proceedings because those provisions address the rights of an accused in "criminal prosecutions." Or Const, Art I, § 11; US Const, Amend VI. Civil commitment proceedings are civil, not criminal. *See State v. O'Neill*, 274 Or 59, 70-72, 545 P2d 97 (1976) (explaining that a civil commitment hearing is not a criminal proceeding and *Miranda* warnings are not required before statements made by the appellant in hospital records can be admitted into evidence). Therefore, because neither the state nor federal constitutional criminal procedure rights apply in civil commitments, to the extent that there is a right to be free from restraints in civil commitment proceedings, it must derive from the Due Process Clause of the Fourteenth Amendment.

That clause provides that no state shall "deprive any person of life, liberty, or property, without due process of law." US Const, Amend XIV, § 1. The United States Supreme Court has recognized "that civil commitment for any purpose constitutes a significant deprivation of liberty that requires due process protection." *Addington v. Texas*, 441 US 418, 425, 99 S Ct 1804, 60 L Ed 2d 323 (1979). The Oregon Constitution does not have a due process clause. *State v. Merrell*, 170 Or App 400, 403, 12 P3d 556 (2000), *rev den*, 331 Or 674 (2001). As a result, in Oregon, persons alleged to be mentally ill are entitled to due process protections under the federal constitution. *See, e.g.*, *State v. T. C.*, 327 Or App 558, 562, 536 P3d 591 (2023), *rev den*, 371 Or 825 (2024) ("Where the state seeks to civilly commit a person for any purpose, prehearing notice is a core component of the due process protections afforded by the Fourteenth Amendment

to the United States Constitution."); *State v. Allison*, 129 Or App 47, 49-50, 877 P2d 660 (1994) ("Involuntary commitment proceedings involve the possibility of a massive curtailment of liberty and, thus, implicate due process protections." (Internal quotation marks omitted.)).

When determining what the federal right to due process requires, courts consider the three factors set out in *Mathews v. Eldridge*, 424 US 319, 96 S Ct 893, 47 L Ed 2d 18 (1976). Those factors are:

> "First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, *** and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail."

*Id.* at 335.[3]

Applying those factors here to determine whether there is a due process right to be free of restraints in civil commitment cases, we begin by noting that the private interest at stake is significant because it involves a "threatened loss of liberty," as well as the adverse and stigmatizing social consequences that can result from a civil commitment. *State v. Matthews*, 46 Or App 757, 762, 613 P2d 88, *rev den*, 289 Or 588 (1980), *cert den*, 450 US 1040 (1981); *see also State v. A. M.*, 333 Or App 453, 462, 553 P3d 593, *adh'd to on recons*, 335 Or App 320, 558 P3d 75 (2024) (stating that the private interest affected by an involuntary civil commitment is significant).

Under the second factor, requiring physical restraints at a civil commitment hearing absent a showing that the person presents an immediate and serious risk of dangerous or disruptive behavior could lead to an erroneous deprivation of liberty. In the context of a criminal trial,

---

[3] In an opinion by our court, when deciding whether the appellant had a right to remain silent in a civil commitment proceeding, we considered the same three factors, albeit in a slightly different order: "In determining the specifics of due process in any given situation three factors must be considered: first, the private interest that will be affected by the state's action; second, the state's interest; and finally, the risk of an erroneous decision if the procedure is not applied." *State v. Matthews*, 46 Or App 757, 762, 613 P2d 88, *rev den*, 289 Or 588 (1980), *cert den*, 450 US 1040 (1981).

we have explained that shackles "may inhibit consultation with [a defendant's] attorney and [the defendant's] decision whether to take the stand as a witness." *State v. Kessler*, 57 Or App 469, 474, 645 P2d 1070 (1982); *see also Washington*, 355 Or at 629 (same).

The same concerns apply in a civil commitment proceeding. Use of restraints—and especially the use of full restraints—may inhibit communication between the person alleged to be mentally ill and that person's attorney, and they may inhibit the person's participation in the hearing.[4] And given that the trial court is often required to determine whether the person's mental disorder makes the person dangerous, the use of full restraints at the hearing could bias the civil commitment proceeding in favor of that finding. *See Larsen v. Nooth*, 292 Or App 524, 531, 425 P3d 484 (2018), *rev den*, 364 Or 749 (2019) (James, J., concurring) ("Judges do not become immune to the inherent, unconscious, biases present in the human mind by virtue of their office.").

We must also assess the third *Matthews* factor; namely, the government's interest in civil commitment proceedings:

> "The state has a legitimate interest under its *parens patriae* powers in providing care to its citizens who are unable because of emotional disorders to care for themselves; the state also has the authority under its police power to protect the community from the dangerous tendencies of some who are mentally ill."

*Addington*, 441 US at 426. However, the state "has no interest in confining individuals involuntarily if they are not mentally ill or if they do not pose some danger to themselves or others." *Id*.

Under Oregon case law, the state has similar interests in providing care to persons with mental illness and

___

[4] At the hearing in this case, appellant's attorney requested that appellant not be fully shackled so that he could have the "use of his hands at least ***, so that he can communicate with me." Although appellant testified, he also requested to return to the hospital after his testimony and when leaving he indicated that the restraints were hurting his legs, so the use of full restraints may have been a factor in his desire to leave.

protecting the community. *See Mesch v. Unity Center for Behavioral Health*, 349 Or App 463, 487, ___ P3d ___ (2026) ("The comprehensive civil commitment framework seeks to balance the liberty interest of persons with mental illness with the interest of the state in providing treatment to those persons."); *see also State v. T. L. B.*, 335 Or App 225, 229, 558 P3d 861 (2024), *rev allowed*, 373 Or 556 (2025) (explaining that civil commitment proceedings "are designed to provide care for mentally ill persons as well as to provide for the safety of the community").

A relevant consideration under the third *Matthews* factor is the state's interest in maintaining the dignity of judicial proceedings. As the Court explained when addressing the use of shackles in criminal jury trials,

> "The courtroom's formal dignity, which includes the respectful treatment of defendants, reflects the importance of the matter at issue, guilt or innocence, and the gravity with which Americans consider any deprivation of an individual's liberty through criminal punishment. And it reflects a seriousness of purpose that helps to explain the judicial system's power to inspire the confidence and to affect the behavior of a general public whose demands for justice our courts seek to serve. The routine use of shackles in the presence of juries would undermine these symbolic yet concrete objectives. As this Court has said, the use of shackles at trial affronts the dignity and decorum of judicial proceedings that the judge is seeking to uphold."

*Deck v. Missouri*, 544 US 622, 631, 125 S Ct 2007, 161 L Ed 2d 953 (2005) (internal quotation marks and brackets omitted); *see also State v. Bates*, 203 Or App 245, 251, 125 P3d 42 (2005), *rev den*, 340 Or 483 (2006) (noting, in the criminal context, that shackling can impinge on "the dignity of judicial proceedings" (internal quotation marks omitted)). Although there is no right to a jury trial in civil commitment proceedings, *State v. Mills*, 36 Or App 727, 729-30, 585 P2d 1143 (1978), *rev den*, 285 Or 195 (1979), the state's interest in maintaining the dignity of the proceeding is undoubtedly at play when considering the use of restraints because their use could create the mistaken impression that the person alleged to be mentally ill is being punished, when the focus should be on determining whether the person is in need of

care and whether the community is in need of protection. *Addington*, 441 US at 426.

Under the third *Matthews* factor, we must also consider the burden on the state that the procedural requirement would entail. *Mathews*, 424 US at 335. Like in criminal cases, in civil commitment cases, we think that the state must make a record showing that the person presents an immediate and serious risk of dangerous or disruptive behavior, and the trial court must make a record of its findings and reasoning supporting the use of restraints. *Cf. Washington*, 355 Or at 628. But that showing can be made at the civil commitment hearing, and we do not rule out that, in an appropriate case, it would be sufficient for the state to rely on a report from the sheriff's office to make the necessary showing. Although the requirement to show that the person presents an immediate and serious risk of dangerous or disruptive behavior imposes some burden on the state, considering the significant interests at stake and the risk of an erroneous deprivation of liberty, we think that the burden is justified. *See Trujillo v. Pacific Safety Supply*, 181 Or App 302, 309-10, 45 P3d 1017 (2002), *aff'd*, 336 Or 349, 84 P3d 119 (2004) (explaining that due process requires "minimum procedural safeguards, depending on the nature of the interests involved and a weighing of costs and benefits in terms of the risks of erroneous decisionmaking in the generality of cases"); *see also Koskela v. Willamette Industries, Inc.*, 331 Or 362, 382, 15 P3d 548 (2000) ("Efficiency does not trump the basic constitutional right to a minimally adequate hearing.").

Thus, considering the significant interests at stake and the risk of an erroneous deprivation of liberty, we conclude that there is a due process right to be free from restraints at a civil commitment hearing, and before the court can require a person alleged to be mentally ill to be physically restrained at the civil commitment hearing, due process requires a showing of an immediate and serious risk of dangerous or disruptive behavior.[5]

---

[5] We offer no opinion on the use of restraints in a hospital setting or in transporting persons alleged to be mentally ill to the civil commitment hearing.

C.   *The order requiring the use of full restraints at appellant's
     civil commitment hearing was an abuse of discretion.*

Having clarified that there is such a right, we next
address the trial court's order requiring full restraints in
this case. In criminal cases, we review orders requiring
restraints for abuse of discretion. *See Washington*, 355 Or
at 629 ("We review a trial court's order requiring that a
defendant be physically restrained for purposes of court-
room security * * * for abuse of discretion."). We think the
same standard of review applies in civil commitment cases
because the decision derives from the trial court's power to
control the proceedings, and that authority is not limited to
criminal cases. *See State v. Rogers*, 330 Or 282, 300, 4 P3d
1261 (2000) ("It is well established that a trial court gener-
ally possesses broad discretion to control the proceedings
before it."); ORS 1.010(3) (a court has the power "[t]o pro-
vide for the orderly conduct of proceedings"); ORS 1.010(5)
(a court can "control, in furtherance of justice, the conduct
* * * of all persons in any manner connected with a judicial
proceeding before it"); *see also Dept. of Human Services v.
T. S. M.*, 322 Or App 424, 425, 519 P3d 897 (2022), *rev den*,
370 Or 740 (2023) (in a juvenile dependency case, quoting
ORS 1.010(3), and stating that we review a juvenile court's
actions to control the proceedings for abuse of discretion).

Here, sheriff's deputies transported appellant to
the civil commitment hearing in full restraints and appel-
lant's attorney sought their removal at the hearing. The trial
court reviewed the report prepared by the sheriff's office,
which included information from the investigation report,
and ordered that appellant should remain in full restraints.
Reviewing that decision for abuse of discretion, we are not
persuaded that requiring full restraints was within the
range of legally permissible choices. *See State v. Hayter*, 303
Or App 235, 238, 463 P3d 33 (2020), *rev dismissed*, 369 Or
705 (2022) ("A court abuses its discretion if its decision is
outside the range of legally permissible choices or exceeds
the bounds of reason.").

The sheriff's report on restraints indicated that
appellant had criminal convictions for resisting arrest,
assault with a deadly weapon, and violation of his parole,

but the report did not state when those convictions occurred. It is reasonable to infer they occurred over 20 years before the hearing because appellant had resided in the Oregon State Hospital for 20 years before being discharged to a residential facility about six months before the hearing. Notably, appellant did not face any pending criminal charges at the time of his civil commitment hearing. Because the criminal convictions identified in the sheriff's report were likely to have occurred a long time ago, they did not provide much support for the court's decision to allow the use of restraints.

In drafting its report, the sheriff's office quoted the investigation report, which stated that appellant had "'no ability for safety due to compromised insight and memory.'" However, when that statement is read in context, it is not clear whether the mental health investigator meant that appellant posed a danger to others or whether he was unable to meet his basic personal needs. In the investigation report, the investigator wrote:

> "Client is not medication compliant and will likely require compelled medications regardless of placement and outcome. Client does present with gross disorganization, unable to note any ability for safety due to compromised insight and memory. Writer is unclear surrounding client's full history with state hospitalization, however it does appear client's mental health with recent potential cognitive decline does indicate a higher level of intervention as client cannot agree to treatment and evidences that his quality of life would benefit with ordered intervention as he has benefited from in the past."

Considered in context, the statement that appellant had "no ability for safety" added little to the calculus of whether full restraints in the courtroom were justified.

The report from the sheriff's office also pointed out that a deputy called the psychiatric emergency services (PES) unit at St. Charles Medical Center the day before the hearing. "Nursing staff reported that [appellant] has been taking his medications recently and his behavior is improving." Thus, the nursing staff update suggests that appellant was *not* likely to pose an immediate or serious risk of dangerous or disruptive behavior at the civil commitment

hearing because his behavior was improving. Rather than providing support for the need for full restraints, the nursing staff update weighed against their use, or at least weighed against the use of full restraints. *See, e.g.*, *State v. T. W. W.*, 289 Or App 724, 727 n 1, 410 P3d 1032 (2018) (observing, in a civil commitment case, that the appellant was in restraints at the hearing but that there was "no indication in the record that appellant had attempted or threatened an act of violence prior to the hearing that necessitated the use of restraints").

In our view, the trial court gave undue weight to the sheriff's report in determining whether full restraints were necessary. The court essentially delegated the decision to the sheriff's office or deferred to its preference for full restraints, rather than independently determining whether the state had made a showing of an immediate and serious risk of danger or disruption during the hearing. We acknowledge that appellant's mental health disorder and the conduct described in the investigation report indicated that there was *some* risk of dangerous or disruptive behavior in the courtroom, and we are reluctant to second guess a trial court's assessment of its security needs. *See State v. Perez*, 325 Or App 64, 69, 528 P3d 318 (2023) ("Generally, we do not second guess a trial court's assessment of its security needs.") Here, for example, it was reported that appellant had a long history of psychosis, that he had threatened others and broke things, and that he had thrown "toilet paper with semen on it at a PES tech."

Nevertheless, here, the factors weighing in favor of requiring full restraints were much less compelling than in *State v. J. J. S.*, 337 Or App 5, 10-11, 13, 563 P3d 382 (2024), a case in which we affirmed the decision to require restraints at a civil commitment hearing because the appellant had injured his mother and punched a cab driver. In addition, in *J. S. S.*, the appellant "did not make a record that he would not need to be restrained in the hospital setting." *Id.* at 10. By contrast, here, the record shows that appellant was 72 years old, he was accompanied to the hearing by two sheriff's deputies, his prior criminal convictions likely occurred over 20 years ago, nursing staff indicated that appellant

was taking his medications, and there was some indication that restraints were not required at the hospital because the sheriff's deputy told appellant that the restraints could be removed once appellant was returned to the hospital.

Based on those considerations, we conclude that it was not legally permissible for the court to order appellant to remain in full restraints during the civil commitment hearing and the court abused its discretion when it ordered full restraints.[6]

In their briefing, the parties do not address harmlessness. The error in requiring full restraints was not harmless because, without the state having shown that appellant presented an immediate and serious risk of dangerous or disruptive behavior at the hearing, the trial court violated appellant's federal right to due process. *See* ORS 19.415(2) ("No judgment shall be reversed or modified except for error substantially affecting the rights of a party."). We therefore reverse the judgment of civil commitment and the order prohibiting the purchase or possession of firearms.

Reversed.

---

[6] We offer no opinion on whether it would have been permissible to require partial restraints at the hearing.